BETHEL BAPTIST CHURCH; Harris, Reverend Richard A.; Paul, Donald M.; Hockman, James F.; Roberts, John D.; Kenna, Nancy L.; Martin, Paul Jr.; Rist, Darl W.; Armistad, Willie; Beers, Neil; Beers, Sophia; Brittingham, Richard; Brittingham, Marian; Bergey, Paul and Bergey, Carolee, Appellants,

v.

UNITED STATES of America.

No. 86–5300.

United States Court of Appeals, Third Circuit.

Argued Dec. 16, 1986.

Decided June 30, 1987.

---

William Bentley Ball (argued), Phillip J. Murren, Sandra E. Wise, Michael Cherewka, Ball & Skelly, Harrisburg, Pa., for appellants.

Roger M. Olsen, Rachael L. Paup, Gary R. Allen, Teresa E. McLaughlin (argued), Appellate Section, Tax Div., U.S. Dept. of Justice, Washington, D.C., for appellee.

Before HIGGINBOTHAM and BECKER, Circuit Judges, and DUMBAULD, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This appeal requires us to consider the constitutionality of various sections of the Internal Revenue Code, primarily in light of *United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982). Specifically, we are asked to determine whether the present social security taxation of appellants is consistent with the first, fifth, and fourteenth amendments. Because we find that the district court properly applied existing legal principles to this case, we will affirm.

### I.

Appellant Bethel Baptist Church ("Bethel Baptist" or "the Church") is an independent Baptist Church which is not subject to the control of any larger ecclesiastical body. The remaining appellants are various Church officers and employees or parents of children who attend Bethel Baptist's school.[1] The Church is a congregational polity consisting of and governed by its members. As an integral part of its religious mission, the Church operates sev-

---

* Honorable Edward Dumbauld, Senior Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. Bethel Baptist is joined in this suit by two of its officials: Richard A. Harris, the Church's pastor, and Donald M. Paul, the chairman of Bethel Baptist's board of deacons. Other appel-

lants include Church school employees James M. Hockman, John D. Roberts, Nancy L. Kenna, Paul Martin, Jr., and Daryl W. Rist, and school student parents Willie Armistad, Neil Beers, Sophia Beers, Richard Brittingham, Marian Brittingham, Paul Bergey and Carolee Bergey.

eral ministries, including Grace Independent Mission Board and Upper Bucks Christian School. Several church members assist Bethel Baptist's pursuit of its mission by working for the Church. Each congregational member who works for the Church must be a "born again" Christian and must have experienced a religious call to the vocation in which s/he is employed. Although employed Church members earn less money than they could in comparable secular positions, they choose to work for Bethel Baptist because of their religious beliefs. Most significant for purposes of this appeal, while Church members believe that they have a religious duty to obey all just laws, they also believe that Scripture requires them as Christians to provide for their own financial security. Church members believe further that if they cannot do so, their Church must provide for them by means of its own choosing. Consequently, as a matter of religious principle, Bethel Baptist's members oppose any governmental attempt to assume their religious responsibility of self-care or to dictate the means by which the Church shall discharge its provisional responsibilities to its members. In accordance with these beliefs, Bethel Baptist has since 1978 maintained its own private social program for care of employees which provides life insurance, disability and medical care coverage, and pension benefits.

In 1983, Congress amended the Social Security Act and the Internal Revenue Code to make churches and other nonprofit religious organizations and their employees subject, for the first time, to mandatory social security taxation, effective January 1, 1984. *See* Social Security Amendments of 1983, Pub.L. No. 98–21, § 102(b)(2)(C), 97 Stat. 70–71. In July 1984, Congress partially restored the previous exemption for churches and certain church-controlled organizations, retroactive to January 1, 1984, by enacting § 2603(b) of the Deficit Reduction Act of 1984, Pub.L. No. 98–369, 98 Stat. 494 ("DRA"). Section 2603(b), which added § 3121(w) to the Internal Revenue Code, permitted churches and certain church-controlled organizations that are opposed for religious reasons to the payment of employer social security taxes to elect irrevocably to exempt themselves from social security taxation, if the churches and organizations exercised their options between July 18, 1984 and October 30, 1984. 26 U.S.C. § 3121(w) (Supp.1985).[2] This limited opportunity for exemption, however, extended only to churches and church-controlled organizations; employees of electing churches—other than certain ministers, religious members and Christian Science Practioners exempted from taxation for services rendered in the exercise of religious duty pursuant to 26 U.S.C. § 3121(b)(8)(A) (Supp.1985)—became subject to social security tax at a rate equal to the combined employer and employee social security tax rate.[3] Due to this feature, the 1984 amendment did not completely alleviate the religious problems that the 1983 amendment had created for Bethel Baptist. The 1983 amendment required Bethel Baptist to pay employer social security tax for each employee, the continued payment of such taxes being a violation of the Church's fundamental religious principles. If the Church sought to avoid such payment by exercising the exemption option provided by the 1984 amendment, however, religious

**2.** 26 U.S.C. § 3121(w) provides in relevant part:
(1) General rule.—Any church or qualified church-controlled organization ... may make an election within the time period described in paragraph (2), in accordance with such procedures as the Secretary determines to be appropriate, that services performed in the employ of such church or organization shall be excluded from employment for purposes of title II of the Social Security Act and chapter 21 of this Code. An election may be made under this subsection only if the church or organization is opposed for religious reasons to the payment of the tax ...

(2) Timing and duration of election.—An election under this subsection must be made prior to the first date, more than 90 days after the date of the enactment of this subsection, on which a quarterly employment tax return for the tax imposed ... is due, or would be due but for the election, from such church or organization. An election under this subsection shall apply to current and future employees, and shall apply to service performed after December 31, 1983.

**3.** That rate for the years 1984–1987, inclusive, equals 11.4%.

principles would obligate the Church to compensate its employees for the increase in their individual social security taxes (equal to the usual employer's social security obligation). Consequently, Bethel Baptist would be required to divert funds from other, religious uses, and would be forced to pay the equivalent of the social security tax it would pay if it did not exercise its option. Bethel Baptist resolved not to exercise its option to elect-out.

On April 30, 1984, in accordance with the amendments, Bethel Baptist filed an employer quarterly tax return for the first quarter of 1984. Based on the rates then in effect, Bethel Baptist correctly reported a tax liability of 13.7 percent of wages paid, or $17,795.04. Of the liability, $9,092.36 (or 7 percent of the wages paid) constituted the employer tax for which Bethel was directly liable under 26 U.S.C. § 3111 (Supp.1985), and $8,702.68 (or 6.7 percent of the wages paid) constituted the employee tax which 26 U.S.C. §§ 3101 and 3102 (Supp.1985) required Bethel Baptist to withhold. Bethel Baptist made the entire tax payment from funds collected before the date of the return.

On May 3, 1984, Bethel Baptist filed a claim for refund of the taxes with the Internal Revenue Service ("IRS"), seeking recovery of both the employer and employee shares of the tax. In accordance with Treas.Reg. § 31.6402(a)–2(a)(2) (1986)[4], it included in its claim a statement that it had secured written consent from affected employees to claim refunds on their behalf. On September 4, 1984, the IRS mailed Be-

thel Baptist a letter in which it informed the Church of the pertinent provisions of the 1984 amendment and advised the Church that the deadline for making the § 3121(w) election was October 30, 1984.[5] Also enclosed was a copy of the form designated by the Secretary of the Treasury for making the election under § 3121(w). Bethel Baptist, however, did not file the form or otherwise attempt to make the election at any time prior to that statutory deadline. Accordingly, after the time for making the election expired, the IRS denied Bethel Baptist's claim for refund. Appellants then filed this suit in the United States District Court for the Middle District of Pennsylvania, asserting that the new statutory scheme created by Congress violated the free exercise and establishment clauses of the first amendment and that 26 U.S.C. § 1402(e) (1982) and (g) (Supp.1984), which had existed previously, violated the equal protection clause of the fourteenth amendment as incorporated into the fifth amendment. The government moved to dismiss the claims of the individual plaintiffs on grounds the district court lacked jurisdiction. Subsequently, appellants moved to compel answers to interrogatories and production of documents. The government then moved for summary judgment on Bethel Baptist's claims on grounds that Bethel Baptist could not challenge the statutory scheme's constitutionality since the Church had chosen not to exempt itself under § 3121(w) and that, even if Bethel Baptist could challenge the statutory

**4.** Treas.Reg. § 31.6402(a)—2(a)(2) provides:

(i) Every claim filed by an employer for refund or credit of employee tax under section 3101 or section 3201, or a corresponding provision of prior law, collected from an employee shall include a statement that the employer has repaid the tax to such employee or has secured written consent of such employee to allowance of the refund or credit. The employer shall retain as part of his records the written receipt of the employee showing the date and amount of the repayment, or the written consent of the employee, whichever is used in support of the claim.

(ii) Every claim filed by an employer for refund or credit of employee tax under section 3101, or a corresponding provision of prior law, collected from an employee in a

calendar year prior to the year in which the credit or refund is claimed, also shall include a statement that the employer has obtained from the employee a written statement (a) that the employee has not claimed refund or credit of the amount of the overcollection, and if so, such claim has been rejected, and (b) that the employee will not claim refund or credit of such amount. The employer shall retain the employee's written statement as part of the employer's records.

**5.** A timely election under § 3121(w) by Bethel Baptist would have been retroactive to December 31, 1983 and thus would have been applicable to the taxes for which the Church sought a refund. *See supra* note 2.

scheme, the scheme was constitutional as a matter of law.

The district court considered the motions together. Though the district court dismissed the claims of Paul and Harris on grounds they lacked standing as church officers to seek a refund of taxes paid by Bethel Baptist, it ruled that the employees and parents had standing to challenge the statutory scheme.[6] The district court also ruled that Bethel Baptist itself had standing to challenge the scheme since the Church's fundamental tenets were implicated whether or not it elected to exercise its exemption option. Nevertheless, the district court, relying primarily on the decision of the Supreme Court in *United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982), then granted the government's motion for summary judgment. It also denied appellants' motion to compel discovery on grounds that no issue of material fact existed. 629 F.Supp. 1073. The district court's judgment is now appealed.

## II.

Appellants make four claims. First, they assert that the district court erred in concluding that Congress's statutory scheme does not violate the free exercise clause of the first amendment. Alternatively, appellants contend that the district court erred in denying appellants' discovery motion and granting appellee's summary judgment motion since one of appellants' affidavits raised a genuine issue of material fact. Third, appellants assert that the district court erred in concluding that the scheme does not violate the first amendment's establishment clause. Finally, appellants contend that, contrary to the district court's conclusion, the scheme does violate the fourteenth amendment concept of equal protection as incorporated into the fifth amendment. Since each claim presents

6. We will not determine whether employees-appellants did in fact have standing pursuant to 28 U.S.C. § 1346(a)(1) (1982) to join Bethel Baptist's refund claim and whether parents-appellants had standing to join that claim pursuant to 28 U.S.C. § 1346(a)(2) (1982), as the District Court found. Because it is clear Bethel Baptist

only an issue of law, our review with respect to all claims is plenary. *United States v. Adams*, 759 F.2d 1099 (3d Cir. 1985); *Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329 (3d Cir.1985). We consider the claims in the above order.

## III.

Appellants assert that the Internal Revenue Code's statutory scheme violates the free exercise clause of the first amendment primarily because the scheme forces appellants to pay social security taxes in contravention of their basic religious convictions. As the district court noted, the United States Supreme Court directly addressed the issue of social security taxation in contravention of religious belief in *United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982). In *Lee*, a member of the Old Order Amish, who believe that there is a religiously based obligation to provide for fellow members the kind of assistance contemplated by the social security system, employed several other Amish as workers on his farm and in his carpentry shop. For several years, the Amish employer refused to withhold social security taxes from his employees' pay or to pay the employer's share of the tax. After the IRS assessed the employer for the unpaid taxes, he paid a portion thereof and then sued for a refund, claiming imposition of the tax violated the first amendment. On direct appeal, the Supreme Court reversed the district court's ruling that the imposition of the social security tax was unconstitutional.

In reaching its conclusion, the Court recognized that compulsory participation in the social security system may "interfere[ ] with the free exercise rights of [religious groups]" such as Bethel Baptist, who provide for fellow members out of religious obligation. *United States v. Lee*, 455 U.S. at 257, 102 S.Ct. at 1055. The Court also

did have standing to assert its claim, and because Bethel Baptist makes every claim that other appellants would have made, we will pass on the merits of these claims without considering the district court's ruling on the standing of these other appellants.

recognized, however, that the state may justify such an infringement by demonstrating that the infringement is essential to the accomplishment of an overriding governmental interest. *Id.* at 257–58, 102 S.Ct. at 1055. The Court then found that the broad public interest in maintaining certain sound tax systems is such an interest. *Id.* at 260, 102 S.Ct. at 1056–57. After noting the importance of and strong similarity between the income tax and social security tax systems, the Court stated that such "tax system[s] could not function if denominations were allowed to challenge the tax system[s] because tax payments were spent in a manner that violates their religious belief." *Id.* Finally, the Court concluded that the broad public interest in the maintenance of these systems was of such a high order that religious belief in conflict with the payment of the respective taxes provides no constitutional basis for resisting them. *Id.* Thus, at least with respect to the payment of income taxes and social security taxes, the Court has determined that the balance between the private interest in religious freedom and the government interest in tax collection and maintenance of a functioning tax system should be struck in favor the governmental interest.

It follows that the district court properly concluded that *Lee* controls here. *Lee* demonstrates that with respect to the social security tax, the government's interest in tax collection outweighs any private religious interest in the non-payment of taxes. Faced merely with appellants' claims to the contrary, the district court, in light of *Lee's* clarity and recency, had little choice but to dismiss appellants' actions as a matter of law.

Appellants also assert that the Internal Revenue Code's statutory scheme violates the free exercise clause of the first amendment because the scheme (1) reduces take-home pay and thus forces Bethel Baptist's employees to leave religious vocations for higher-paying secular jobs; (2) would have imposed financial hardship on Bethel Baptist by forcing the Church to compensate employees for lost wages in accordance with the sect's religious principles if the Church had exercised its exemption option; and (3) will force some Bethel Baptist members to educate their children in secular schools if the Church defrays tax increases by increasing tuition at Bethel Baptist's school. Since *Lee* shows that direct impairment of religious beliefs of the type here involved is constitutionally permissible if necessary to protect the social security system, it is difficult to comprehend how the indirect burdens asserted by appellants could render the challenged provisions unconstitutional. As noted previously, the public interest in the social security system outweighs any private religious interest in non-statutory exemption from social security taxation. Appellants did not show, and under the circumstances of this case would appear unable to show, that the aforementioned indirect burdens implicate weightier interests than did the direct burden of compelled participation in the social security system, in contravention of religious belief, that the Supreme Court countenanced in *Lee.* Thus, these religious interests in freedom from indirect burdens too must yield to the broader public interest.[7]

---

**7.** Other Supreme Court precedent also shows that indirect burdens of the type challenged by appellants are constitutionally permissible. In *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), the Court found that indirect tax burdens on religious activity, such as tax on the income of a preacher, are permissible. *Id.* at 112, 63 S.Ct. at 874. Only those taxes which threaten to suppress religious activity at the threshold, such as a flat license tax on which the right to preach is conditioned, the Court concluded, are prohibited by the Constitution. *Id.* The social security tax closely resembles an income tax. Though it serves a different purpose, the social security tax, like an income tax, constitutes only a fraction of any employee's wages. Thus, whatever an employee earns, s/he can fulfill her/his social security obligation. Consequently, unlike a license tax, the social security tax cannot preclude religious activity, even where it is assessed against a person engaged in religious vocation. Since the social security tax imposes only the indirect burden deemed permissible by *Murdock,* appellants' claims of indirect tax burden must prove unsuccessful even if *Lee* does not dispose of such claims.

Appellants alternatively contend that if *Lee* is apposite, the district court erred in granting appellees' motion for summary judgment because the pleadings raised a genuine issue of material fact. Specifically, appellants assert that the affidavit of Peter J. Ferrara, *see* App. at 110–116, suggests that the social security system would remain solvent even if appellants, and all others with religiously based objections to the payment of social security taxes, did not contribute to the system. Since *Lee*'s holding was grounded in a determination that the government had a compelling interest in maintaining a solvent social security system, appellants argue, the district court was required at a minimum to hold a trial to determine whether appellants' participation in the system advanced the government's compelling interest in the system's solvency.

We find appellants' arguments unpersuasive. In *Lee*, the Court identified at least two governmental interests that, in the social security tax context, countervail the private interest in religious freedom from tax payment. One interest is in fact the interest in the fiscal integrity of the social security system, which the Court concluded would be threatened by the type of constitutional exemption appellants seek. *Id.* 455 U.S. at 260, 102 S.Ct. at 1057. As noted earlier, however, independent of the interest in the system's fiscal integrity, the Court found a broader public interest simply in the collection of social security taxes and the maintainence of a functioning social security tax system to be compelling. *Id.* This second, more general interest wholly justifies the district court's disposition of this case and makes irrelevant Ferrara's affidavit and the factual issues it might raise. Though Ferrara's affidavit does dispute the factual inference drawn by the Court concerning the social security system's fiscal vitality,[8] the affidavit does

not undermine the Court's conclusion that the social security system could not, as a practical matter, function if constitutionally-based religious exemptions were permitted. Since the Ferrara affidavit raises no legal or factual issue which relates to this ground for summary judgment in the government's favor, we must reject appellant's assertion that summary judgment was improper under the circumstances.

## IV.

■ Appellants also assert that the Internal Revenue Code's statutory scheme violates the establishment clause of the first amendment. In *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) the Supreme Court determined that to withstand constitutional scrutiny, a statute challenged under the establishment clause must satisfy three requirements.

First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; and finally, the statute must not foster "an excessive government entanglement with religion."

*Id.* at 612–613, 91 S.Ct. at 2111 (quoting *Walz v. Commissioner*, 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970)) (citations omitted). Here, the parties agree that the statutory scheme satisfies the first two *Lemon* requirements. Appellants contend, however, that the scheme violates the establishment clause because it requires governmental supervision and inspection of the Church's social security tax records. We find this contention unpersuasive. Although it is true that Bethel Baptist's compliance with the statutory scheme will require the Church to withhold tax at the statutory rate, to pay that tax to the government, and to provide and keep records verifying payment, *see* Appellants' Brief at 47, the scheme requires no more.

---

8. Though we do not rule on the issue, we note that there is some uncertainty as to whether a lower court litigant may defeat a motion for summary judgment where he or she challenges a factual determination upon which the resolution of a prior constitutional question depended. *See Fort Towers, Inc. v. City of Miami Beach*, 360 So.2d 81 (Fla.Dist.Ct.App.1978) (federal and state constitutional challenge to validity of city rent control ordinance properly disposed of by summary judgment despite proffered proof where prior decisions established that emergency housing situation did in fact exist); *see also, Agustin v. Quern*, 611 F.2d 206 (7th Cir.1979) (summary judgment proper where Supreme Court precedent clearly established that state Medicaid legislation did not constitute *ex post facto* law).

Any governmental inquiry about the records will relate solely to the social security taxes owed and those paid. No governmental agency will be forced to attempt to influence activity by Bethel Baptist or to ensure that certain of Bethel Baptist's activities are secular rather than religious. In this respect, social security differs from those government programs which have been found to require unconstitutional governmental entanglement. *Cf. Aguilar v. Felton,* 473 U.S. 402, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985) (provision of public employees to sectarian school violated establishment clause because excessive government entanglement necessary to ensure employees advanced only non-sectarian interests); *Meek v. Pettinger,* 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975) (statute intended to provide non-essential educational services to nonpublic schools violated establishment clause because prophylactic contacts required to ensure non-sectarian use of services intolerably entangled government). Rather, social security seems to require only the unobtrusive type of governmental inquiries which the state may undertake to ensure that records are kept in accordance with the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* (1982) and local fire and zoning regulations. *See Tony and Susan Alamo Found. v. Secretary of Labor,* 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) (record keeping requirements of Fair Labor Standards Act do not violate establishment clause when applied to religious organization because Act, like fire and zoning ordinances, merely requires organization to keep records and to provide them to state when inspection is necessary). Because the social security statutory scheme requires only minimal governmental supervision of religious activity, the government will prevail on appellant's establishment clause claim.

## V.

■ Appellants' equal protection claim centers on 26 U.S.C. § 1402(e) (1982) and (g) (Supp.1984). Section 1402(e) exempts from social security taxation ministers, members of religious orders, and Christian Science practioners, who have an individual conscientious objection to payment of such taxes, irrespective of the tenets of their religious faith. The section applies only to self-employment income derived from religious activities. The § 1402(g) exemption is available to members of religious organizations, which in principle and practice support dependent individuals, who by reason of such membership, are conscientiously opposed to social insurance; it applies to all self-employment income from whatever source derived. Appellants assert that the sections violate the fourteenth amendment's equal protection concept as incorporated in the due process clause of the fifth amendment [9] because they exempt certain religious organizations and certain members of religious groups from social security taxation but not Bethel Baptist and other appellants. As the Supreme Court has noted, such a "contention of ... religious discrimination, rendering [the challenged provisions] fatally underinclusive cannot simply be brushed aside." *Gillette v. United States,* 401 U.S. 437, 452, 91 S.Ct. 828, 837, 28 L.Ed.2d 168 (1971). Essentially, appellants contend that Congress could not constitutionally enact § 1402(e) and (g), which confer a benefit (a tax exemption) on only certain religious groups and group members, without a compelling interest in making a distinction on the basis of religious affiliation and practice. Appellants contend further that because the Government has not identified such an interest, § 1402(e) and 1402(g) must be struck down.

Appellants' assertions misinterpret precedent and overstate the government's obligations. While it is true the Constitution forbids governmental discrimination on the basis of religion, *see Gillette,* 401 U.S. at 452, 91 S.Ct. at 837, the government must establish a compelling reason for a distinction such as that made in § 1402(e) and (g) "only if the plaintiff can show the basis for the distinction was religious and not secular in nature." *Olsen v. Commissioner of Internal Revenue,* 709 F.2d 278, 282 (4th Cir.1983) (quoting *Gillette v. Unit-*

---

**9.** For a consideration of the incorporation of the fourteenth amendment concept of equal protection into the due process clause of the fifth amendment, *see Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

**1342**

*ed States,* 401 U.S. at 452, 91 S.Ct. at 837). If the distinction's basis is secular, the distinction's justification need only be rational. *Id.*

We conclude both that the underlying bases for § 1402(e) and (g) are secular and that the sections' justifications are rational. Section 1402(e) exempts ministers, members of religious organizations and Christian Science practioners from self-employment social security taxation because Congress concluded that the taxation of the specific parties named in the section "might interfere with the well-established principle of separation of church and state." S.Rep. No. 1987, 83d Cong., 2d Sess. 8–9, *reprinted in* 1954 U.S.Code Cong. & Admin.News 3710, 3718.[10] Congress also determined that limitation of the exemption to a narrow set of named parties was necessary to ensure that the social security program would remain financially sound and not be undermined by an excessive number of exemptions. The former justification is clearly secular because it represents an attempt to comply with a plausible judicial construction of the first amendment. The latter justification is clearly rational since it represents a reasoned judgment on the requirements of the social security system.[11] Since in enacting § 1402(e), Congress sought to accommodate secular, first amendment concerns and attempted reasonably to guarantee the fiscal integrity of a social insurance program, we find § 1402(e) complies with the fifth amendment.

Similarly, examination of § 1402(g) reveals that that section too is secularly based and rationally justified. Congress enacted § 1402(g) to exempt from unnecessary taxation members of sects which over a period of time had made reasonable provisions for dependent members. *Templeton v. Commissioner of Internal Revenue,* 719 F.2d 1408, 1414 (7th Cir.1983). Congress also narrowed the exemption, limiting it to

sects able to make a showing of sustained adequate, religiously dictated provision for members before December 31, 1950, because it concluded that a broad exemption might affect the soundness of the social security system. Congress's motivation in avoiding unnecessary taxation is obviously secular. And its limitation of the exemption, which effectively stymies any post–1950 attempt to take advantage of the exemption for religious reasons, is inherently reasonable, though the limitation may unfortunately exclude religious groups and members who clearly act out of religious commitment. We therefore conclude that § 1402(g) also complies with the fifth amendment.

### VI.

Accordingly, the judgment of the district court will be affirmed.

---

**10.** This congressional conclusion does not discredit our holding that appellants' establishment clause claim is incorrect. Congress may have acted in a rational, though overly cautious, manner in assuming that taxation of the persons identified in § 1402(e) would implicate the first amendment. Congress may rationally limit the scope of its legislation where expansion of

scope may raise, as it could have in the case of § 1402(e) (enacted in 1954), as-yet unanswered constitutional questions.

**11.** As we have noted, a concern for the integrity of the social security program may be compelling, not merely rational.