In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1102

United States of America,

Plaintiff-Appellee,

v.

Indianapolis Baptist Temple,

Defendant-Appellant.


Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP98-0498 C-B/S--Sarah Evans Barker, Chief Judge.


Argued May 11, 2000--Decided August 14, 2000


Before Coffey, Evans, and Williams, Circuit Judges.

Williams, Circuit Judge. The members of Indianapolis Baptist Temple (IBT) believe it to be a sin for their church to pay taxes. Accordingly, since at least 1987, IBT has paid none of the federal employment taxes for which it is responsible. After attempts to secure payment of the taxes due through 1993 failed, the government filed suit against IBT to recover the amount owed. Unpersuaded by IBT's various defenses, the district court granted the government summary judgment. IBT now appeals on the ground that the religion clauses of the First Amendment protect it from liability. We affirm.

I

IBT was founded in 1950 and operated as a not-for-profit corporation until 1983, when it began operating as a unincorporated religious society. In 1986, IBT renounced its status as an unincorporated religious society, opting instead to define itself as a "New Testament Church," based on its belief that the exclusive sovereignty of Jesus Christ over the church required it to disassociate itself from secular government authority. Around the same time, and for the same reason, IBT also stopped filing federal employment tax returns and paying the federal employment taxes for which it was responsible.

There are three federal employment taxes--the social security tax, the medicare tax, and the normal income tax. Employers must pay half of the applicable social security and medicare taxes and must withhold from employees' wages the other half of the applicable social security and medicare taxes, as well as all of the applicable normal income tax. 26 U.S.C. sec.sec. 3102(a), 3111(a), (b), 3402. Employers are liable for both the taxes imposed directly on them and the taxes they are required to withhold from employees. 26 U.S.C. sec.sec. 3102(b), 3111(a), (b), 3403. Since sometime before 1987, IBT has paid none of these taxes.

Eventually, the Internal Revenue Service (IRS) contacted IBT about its failure to file employment tax returns, but IBT offered no indication that it would file returns. As a result, in early 1994, the IRS prepared quarterly returns for IBT beginning in 1987 and continuing through 1993. The IRS then sent the forms to IBT so that IBT could check the accuracy of the amounts on the returns, but IBT submitted no corrections. After the time for submitting corrections had passed, the IRS calculated an assessment of tax, interest, and additions totaling $3,498,355.62 and sent a notice and demand for payment to IBT.

When the assessment went unpaid, the government filed suit against IBT seeking to reduce the assessment to a judgment and to initiate foreclosure proceedings against two parcels of real estate owned by IBT. In defense of its failure to pay, IBT argued that the tax assessments at issue were not properly made against it and that the religion clauses of the First Amendment protect it from liability. On cross-motions for summary judgment, the district court rejected both of IBT's arguments and awarded the government the relief it sought. IBT now appeals, but only on the ground that the First Amendment's religion clauses prevent the government from taxing it.

II

IBT challenges the district court's decision on the grounds that both the Free Exercise and Establishment Clauses of the First Amendment, as well as general principles of religious liberty embodied in the First Amendment, protect it from having to pay taxes. As with all appeals from decisions granting summary judgment, we review the district court's decision de novo, construing the evidence and the inferences drawn from it in the light most favorable to the non-moving party. Curran v. Kwon, 153 F.3d 481, 485 (7th Cir. 1998).

A.  Free Exercise Clause

     IBT contends that the federal employment tax laws, as applied to it, violate the Free Exercise Clause of the First Amendment by requiring the church to act in a manner inconsistent with its beliefs. Specifically, IBT alleges that complying with the federal employment tax laws would require it to recognize the sovereignty of the federal government over the church, something that would be inconsistent with its belief in the exclusive sovereignty of Jesus Christ over the church. In IBT's view, the Free Exercise Clause grants it a right to act in accordance with its beliefs, notwithstanding contrary federal law.

     The Free Exercise Clause absolutely protects the freedom to believe and profess whatever religious doctrine one desires. Employment Div., Dep't of Human Resources v. Smith, 494 U.S. 872, 876-77 (1990); Sherbert v. Verner, 374 U.S. 398, 402 (1963). It also provides considerable, though not absolute, protection for the ability to practice (through the performance or non-performance of certain actions) one's religion. Smith, 494 U.S. at 877-78; Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 546-47 (1993). Significantly, however, neutral laws of general application that burden religious practices do not run afoul of the Free Exercise Clause. Smith, 494 U.S. at 878-85.

     IBT does not (and, in any event, could not) contest the government's characterization of the federal employment tax laws as neutral laws of general application. Those laws are not restricted to IBT or even religion-related employers generally, and there is no indication that they were enacted for the purpose of burdening religious practices. Contrast Church of the Lukumi Babalu Aye, 508 U.S. at 531-45 (concluding that laws forbidding a particular religion's animal sacrifices were neither neutral nor generally applicable). Accordingly, IBT's Free Exercise challenge to the federal employment tax laws must be rejected.

     IBT, however, argues from the premise that this conclusion does not follow directly from the fact that the federal employment tax laws are neutral laws of general application. Rather, IBT proceeds as though the Religious Freedom Restoration Act (RFRA), 42 U.S.C. sec. 2000bb-1 et seq., somehow overturned the Supreme Court's decision in Smith--that neutral laws of general application cannot be attacked on Free Exercise grounds--and reinstated the pre-Smith standards for evaluating Free Exercise challenges. RFRA did not (and could not) do this. See City of Boerne v. Flores, 521

U.S. 507, 516-20, 535-36 (1997). RFRA simply established an independent statutory regime essentially prohibiting the enforcement of laws that cannot satisfy the pre-Smith standards./1

Even if IBT's misguided attempts to invoke RFRA as a constitutional standard are construed generously as an effort to seek relief on statutory grounds, IBT's challenge to the federal employment tax laws must still be rejected. Under RFRA, laws that substantially burden the free exercise of religion cannot be enforced unless the burden furthers a compelling government interest and is the least restrictive means of furthering that interest. 42 U.S.C. sec. 2000bb-1. In several pre-Smith Free Exercise challenges to the application of federal tax laws, the Supreme Court and various courts of appeals concluded both that maintaining a sound and efficient tax system is a compelling government interest and that the difficulties inherent in administering a tax system riddled with judicial exceptions for religious employers make a uniformly applicable tax system the least restrictive means of furthering that interest. See Hernandez v. Commissioner, 490 U.S. 680, 698-700 (1989) (challenge to federal income tax); United States v. Lee, 455 U.S. 252, 258-60 (1982) (challenge to social security tax); South Ridge Baptist Church v. Industrial Comm'n, 911 F.2d 1203, 1206-10 (6th Cir. 1990) (challenge to premiums required by workers' compensation program); Bethel Baptist Church v. United States, 822 F.2d 1334, 1338-39 (3d Cir. 1987) (challenge to social security tax). The cases that have been decided under RFRA reach the same conclusion. See Browne v. United States, 176 F.3d 25, 26 (2d Cir. 1999) (challenge to federal income tax); Adams v. Commissioner, 170 F.3d 173, 175-80 (3d Cir. 1999) (same); Droz v. Commissioner, 48 F.3d 1120, 1122-25 (9th Cir. 1995) (challenge to social security tax). We find this authority persuasive and see no reason to reach a different conclusion.

IBT, however, claims that the cases we have cited can be distinguished on factual grounds as each involved a state-recognized legal entity, whereas IBT is simply a "New Testament Church." But, none of these cases, expressly or implicitly, rely on the fact that the entities involved were state-recognized, nor does such a distinction have any logical connection to the relevant legal standards. Accordingly, we conclude that RFRA provides no basis for sustaining IBT's challenge to the federal employment tax laws.

B.  Establishment Clause

IBT contends that applying the federal

employment tax laws to it violates the Establishment Clause of the First Amendment by deeply involving the government in the internal affairs of the church. In IBT's view, the payment and withholding obligations imposed by these laws, as well as the enforcement proceedings that have resulted from IBT's refusal to comply with these laws, require a constitutionally impermissible amount of government involvement in church affairs.

The Establishment Clause prohibits government sponsorship of, financial support for, and active involvement in religious activities. Jimmy Swaggart Ministries v. Board of Equalization, 493 U.S. 378, 393 (1990); Walz v. Tax Comm'n, 397 U.S. 664, 668 (1970). However, total separation of church and state is not required. Walz, 397 U.S. at 668–72. If a statute has a secular purpose and it has a primary effect of neither advancing nor inhibiting religion, it will be upheld. Mitchell v. Helms, 120 S. Ct. 2530, 2540 (2000) (plurality opinion); Agostini v. Felton, 521 U.S. 203, 232–33 (1997).

IBT concedes that the federal employment tax laws have a secular purpose and only contends that the laws have a primary effect of inhibiting religion to the extent that they foster excessive government entanglement with religion. Cf. Agostini, 521 U.S. at 233 (listing excessive entanglement as one of three primary factors to be considered in evaluating the effect of a law for Establishment Clause purposes). In support of its excessive entanglement argument, IBT relies exclusively on Walz v. Tax Commission, which upheld a property tax exemption for houses of worship against an Establishment Clause challenge, reasoning in part that removing the exemption would likely create greater government entanglement (through property valuations, tax liens, tax foreclosures, etc.) than leaving it in place would. 397 U.S. at 674. IBT claims that Walz thus implies that taxing religious organizations (and all that goes with taxing such organizations) fosters unconstitutionally excessive government entanglement.

We cannot accept IBT's reading of Walz. While taxing religious organizations involves greater government entanglement than not taxing them does, this greater entanglement is not necessarily unconstitutionally excessive. In fact, the Supreme Court has held that the sorts of generally applicable administrative and record keeping requirements imposed by tax laws may be imposed on religious organizations without violating the Establishment Clause. See Jimmy Swaggart Ministries, 493 U.S. at 394-97 (state sales and use tax); Hernandez, 490 U.S. at 695-98

(federal income tax); see also South Ridge Baptist Church, 911 F.2d at 1210 (workers' compensation program); Bethel Baptist Church, 822 F.2d at 1340-41 (social security tax). The normal incidents of collecting federal employment taxes simply do not involve the intrusive government participation in, supervision of, or inquiry into religious affairs that is necessary to find excessive entanglement. See Jimmy Swaggart Ministries, 493 U.S. at 394-96; Hernandez, 490 U.S. at 696-98. Even the somewhat more intrusive tax foreclosure ordered in this case is a discrete event involving no inquiry into religious matters and, as such, raises no excessive entanglement concerns. Accordingly, there is no merit to IBT's Establishment Clause challenge to the federal employment tax laws.

C. Other Arguments

Finally, IBT makes a pair of arguments that rely on what it contends are the general principles behind the religion clauses of the First Amendment. First, IBT argues that applying general regulatory laws to it would abridge the religious liberty guaranteed by the religion clauses. As noted above, however, there is no basis under either the Free Exercise Clause or the Establishment Clause for the argument that neutral, generally applicable, minimally intrusive tax laws (like the ones at issue here) cannot be applied to religious organizations. IBT asserts that Church of the Holy Trinity v. United States, 143 U.S. 457 (1892), and Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints v. Amos, 483 U.S. 327 (1987), are to the contrary, but it is mistaken. In Holy Trinity, the Court declined to interpret an immigration statute to prohibit the immigration of a Catholic priest, in part on the ground that it believed it unlikely that Congress would have intended such a prohibition in light of the nation's strong religious tradition. 143 U.S. at 465-72. The case had nothing to do with the constitutionality of general regulatory laws, and there is no question in this case regarding the intended scope of the federal employment tax laws. In Amos, the Court upheld against an Establishment Clause challenge an exception for religious organizations to Title VII's prohibition on religious discrimination in employment. 483 U.S. at 334-39. Just as with the property tax exemption in Walz, however, the fact that the Establishment Clause allows exceptions for religious entities does not mean that such exceptions are required. Put simply, applying neutral, generally applicable, minimally intrusive tax laws to religious entities does not unconstitutionally abridge the religious liberty guaranteed by the First Amendment.

Second, IBT takes issue with the district court's characterization of it as an unincorporated religious society under Indiana law. IBT contends that it is a "New Testament Church," not an unincorporated religious society, and that by characterizing it as such an entity, the district court "established" a state church and imposed on IBT a form of worship contrary to its beliefs. The district court did neither of these things. It simply described the legal (not religious) nature of an already existing church. In any event, it does not matter what sort of entity IBT is. Whatever it is, it must comply with the federal employment tax laws. Thus, IBT's objection to the district court's characterization of it is both without merit and beside the point.

III

IBT's challenges to the application of the federal employment tax laws to it are without merit. Accordingly, we Affirm the judgment of the district court.

/1 We are aware that the constitutionality of RFRA as applied to the federal government is not without doubt. Contrast City of Boerne, 521 U.S. at 536-37 (Stevens, J., concurring) (suggesting that RFRA is unconstitutional under the Establishment Clause), with Christians v. Crystal Evangelical Free Church (In re Young), 141 F.3d 854 (8th Cir.) (upholding RFRA against an Establishment Clause challenge), cert. denied, 525 U.S. 811 (1998). However, as the government does not contest the law's constitutionality here, we will assume the law is constitutional. See Adams v. Commissioner, 170 F.3d 173, 175 (3d Cir. 1999).