**Martin H. DROZ, Petitioner–Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent–Appellee.**

**No. 93–70049.**

United States Court of Appeals, Ninth Circuit.

Submitted July 11, 1994 *.

Decided March 1, 1995.

As Amended on Denial of Rehearing June 1, 1995.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Martin H. Droz, in pro. per.

Michael L. Paup, Acting Asst. Atty. Gen., Gary R. Allen, Chief, Appellate Section, Ann B. Durney, Reviewer, and Anthony T. Sheehan, Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for respondent-appellee.

Before: POOLE and REINHARDT, Circuit Judges, and TANNER,** District Judge.

POOLE, Circuit Judge:

Martin Droz appeals pro se the tax court's decision upholding the Commissioner's determination of a tax deficiency attributable to $5,748.98 of unpaid self-employment Social Security taxes for tax year 1988. Droz did not pay the taxes on the ground that he had religious objections to the Social Security system. Because Droz did not belong to a religious organization, he did not qualify for an exemption from the taxes under 26 U.S.C. § 1402(g). That section exempts members of religious sects that have tenets or teachings opposed to participation in the Social Security system and that provide reasonable support to their dependent members. Droz contends that denying him an exemption violates the Free Exercise and Establishment Clauses of the First Amendment and denies him due process and equal protection. We disagree, and we affirm.

** Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation.

I

Taxpayers who earn self-employment income must pay a self-employment tax into the Social Security system. 26 U.S.C. §§ 1401(a)–(b), 1402(b). Section 1402(g)(1) exempts members of certain religious sects:

> An individual may file an application ... for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, retirement or makes payments toward the cost of, or provides services for, medical care....

An application for exemption must contain evidence of the applicant's membership in and adherence to the tenets of the sect, and it must contain a waiver of all Social Security benefits. 26 U.S.C. § 1402(g)(1)(A)–(B). In addition, the Secretary of Health and Human Services must find that the applicant's sect (1) espouses tenets or teachings opposed to the Social Security system; (2) has for a substantial period of time made a practice of providing for its dependent members; and (3) has been in existence since December 31, 1950. *Id.* § 1402(g)(1)(C)–(E).

Droz concedes that he is not a member of a religious sect and is therefore ineligible for a § 1402(g) exemption. He argues, however, that his exclusion from the exemption on the ground that he is not a member of a religious sect violates his constitutional rights in three ways: (1) it violates his free exercise rights

under the First Amendment; (2) it requires the government to choose between individuals who share identical religious beliefs in violation of the Establishment Clause; and (3) it denies him due process and equal protection by discriminating against persons with religious beliefs who do not belong to a religious sect.[1]

### A. *Free Exercise Challenge*

The tax court correctly presumed that Droz's objections were based upon sincere religious beliefs. *See, e.g., United States v. Lee,* 455 U.S. 252, 257, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982); *Thomas v. Review Bd. of Indiana Employment Sec. Div.,* 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981). The tax court properly rejected Droz's argument that denying him an exemption violated his First Amendment right to freely exercise those beliefs.

■ To determine whether a government regulation impermissibly burdens an individual's First Amendment right to freely exercise his religious beliefs, a court must decide whether that regulation substantially burdens a sincerely held religious belief; whether the burden is justified by a compelling state interest; and whether the regulation is narrowly tailored to achieve that interest. *Vernon v. City of Los Angeles,* 27 F.3d 1385, 1392 (9th Cir.1994) (citing *Sherbert v. Verner,* 374 U.S. 398, 403, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963); *Thomas,* 450 U.S. at 718, 101 S.Ct. at 1432).[2]

The controlling case in this analysis is *United States v. Lee,* in which the Supreme Court upheld the imposition of Social Securi-

---

1. As the government concedes, Droz has standing to raise his claims. *See Texas Monthly v. Bullock,* 489 U.S. 1, 8, 109 S.Ct. 890, 896, 103 L.Ed.2d 1 (1989); *Heckler v. Mathews,* 465 U.S. 728, 738–40, 104 S.Ct. 1387, 1394–96, 79 L.Ed.2d 646 (1984); *see also Ripplinger v. Collins,* 868 F.2d 1043, 1048 (9th Cir.1989).

2. Until 1990, the law as declared by the Supreme Court was that the First Amendment prevented infringements on the exercise of religious beliefs except when justified by a compelling interest

that could not be achieved through less restrictive means. *See Wisconsin v. Yoder,* 406 U.S. 205, 214–15, 92 S.Ct. 1526, 1532–33, 32 L.Ed.2d 15 (1972). Then, in *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Court held that facially neutral laws would no longer be subject to this level of scrutiny under the First Amendment. However, three years later, the Religious Freedom Restoration Act of 1993 restored the "compelling interest" and "least restrictive means" tests. 42 U.S.C. §§ 2000bb(b)(1), 2000bb–1(b). The Act applies retroactively to federal and state

ty taxes on an Amish employer who failed to pay the taxes on his own behalf and failed to withhold the taxes from the wages of his Amish employees. 455 U.S. at 254, 102 S.Ct. at 1053.[3] The Court determined that participation in the Social Security system interfered with Lee's free exercise rights. *Id.* at 258–59, 102 S.Ct. at 1055–56. It held, however, that the government had a compelling interest in enforcing participation in the Social Security system in order to insure the "fiscal vitality" of a system designed to serve the social welfare. *Id.* at 259–61, 102 S.Ct. at 1056–57. This compelling interest, held the Court, outweighed the burden that participation placed on Lee's religious beliefs. *Id.* at 260–61, 102 S.Ct. at 1056–57.

The Court found that § 1402(g) was narrowly tailored to meet the government's objective because

> it would be difficult to accommodate the comprehensive social security system with myriad exceptions flowing from a wide variety of religious beliefs.... The tax system could not function if denominations were allowed to challenge the tax system because tax payments were spent in a manner that violates their religious beliefs. Because the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax.

*Id.* at 259–60, 102 S.Ct. at 1056–57 (citations omitted).

The Court concluded that

> Congress has accommodated, to the extent compatible with a comprehensive national program, the practices of those who believe it a violation of their faith to participate in the social security system. In § 1402(g) Congress granted an exemption, on religious grounds, to self-employed Amish and others. Confining the § 1402(g) exemption to the self-employed provided for a narrow category which was readily identifiable. Self-employed persons in a

religious community having its own "welfare" system are distinguishable from the generality of wage earners employed by others.

*Id.* at 260–61, 102 S.Ct. at 1057 (citations and footnote omitted).[4]

◼ Under *Lee*, compulsory participation in the Social Security system interferes with Droz's free exercise rights, *id.* at 257, 102 S.Ct. at 1055, but is not unconstitutional. Droz's case is less compelling than that of the plaintiff in *Lee*, who was a member of a religious organization that met the requirements of § 1402(g). Droz does not belong to any religious organization that provides for its dependent members. Thus, permitting him to opt out of the Social Security system would not only threaten the integrity of the system, but would threaten Congress's goal of ensuring that persons who opt out are provided for (and will not burden the public welfare system). *See id.* at 258–61, 102 S.Ct. at 1055–57. Other courts that have addressed this issue have reached this result. *See Olsen v. Commissioner,* 709 F.2d 278, 280–82 (4th Cir.1983); *Kelley v. Terry,* 629 F.2d 572, 572 (9th Cir.1980) (pre-*Lee* case); *see also South Ridge Baptist Church v. Indus. Comm'n of Ohio,* 911 F.2d 1203, 1205–09 (6th Cir.1990) (applying *Lee* and upholding state requirement of mandatory participation in worker's compensation program), *cert. denied,* 498 U.S. 1047, 111 S.Ct. 754, 112 L.Ed.2d 774 (1991).

Droz's citation to *Frazee v. Illinois Dep't of Employment Sec.,* 489 U.S. 829, 109 S.Ct. 1514, 103 L.Ed.2d 914 (1989), does not change this conclusion. In *Frazee,* the Supreme Court held that an Illinois state court's denial of unemployment benefits to a person who refused to work on Sundays for religious reasons, but did not belong to a religious sect with tenets prohibiting work on Sunday, violated that person's free exercise rights. 489 U.S. at 830, 109 S.Ct. at 1516. In *Frazee,* the state's interests would not have been jeopardized by granting an exemp-

---

laws, and to the implementation of those laws, adopted before the date of passage. 42 U.S.C. § 2000bb–3; *see Vernon,* 27 F.3d at 1393 & n.1. Because the RFRA restored the test used to consider free exercise challenges before *Smith,* we rely on pre-*Smith* decisions under the Free Exercise Clause in determining whether the denial of Droz's request for an exemption is consistent with the RFRA.

**3.** If the plaintiff had been self-employed, rather than an employer, he would have been eligible for a § 1402(g) exemption. *Lee,* 455 U.S. at 256, 102 S.Ct. at 1054.

**4.** After *Lee* was decided, Congress extended the exemption to situations where the employer and employee were members of a recognized religious sect that opposed the Social Security system. *See* 26 U.S.C. § 3127.

tion. In the instant case, on the other hand, the government's compelling interest in a fiscally sound Social Security system would be threatened by granting "myriad exceptions." *See Lee*, 455 U.S. at 258–61, 102 S.Ct. at 1055–57. Moreover, the statute in *Frazee* put Frazee in the position of choosing between observing his religion and receiving a benefit affecting his livelihood. The denial of a tax exemption is an entirely different burden.

## B. *Establishment Clause Challenge*

Droz argues that § 1402(g) violates the Establishment Clause because it distinguishes, based on membership in an approved sect, among individuals who share identical religious beliefs. This amounts to discrimination among religions, Droz argues, because some individuals receive exemptions, and other individuals with identical beliefs do not. The tax court properly rejected Droz's Establishment Clause argument.

■ To withstand an Establishment Clause challenge, a statute must have a secular legislative purpose. The statute's primary purpose must neither advance nor inhibit religion, and the statute must not foster an excessive entanglement with religion. *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971); *Vernon,* 27 F.3d at 1396–97.

■ Section 1402(g) does not discriminate among religions: it accommodates, consistent with the goals of the Social Security system, those who oppose Social Security on religious grounds. *See Lee*, 455 U.S. at 260–61, 102 S.Ct. at 1056–57; *Hatcher v. Commissioner,* 688 F.2d 82, 84 (10th Cir.1979); *Jaggard v. Commissioner,* 582 F.2d 1189, 1189–90 (8th Cir.1978), *cert. denied,* 440 U.S. 913, 99 S.Ct. 1228, 59 L.Ed.2d 462 (1979). Put differently, § 1402(g) grants a religious exemption, provided that the individual belongs to an organization with its own welfare system. This is not a promotion of some religions over others. It is a religious exemption narrowly drawn to maintain a fiscally sound Social Security system and to ensure that all persons are provided for, either by the Social Security system or by their church. In addi-

tion, the fact that § 1402(g)'s effect is to neither advance nor inhibit religion is shown by the requirement that a person must waive all Social Security benefits to receive an exemption. 26 U.S.C. § 1402(g)(1).

Droz argues that this court should apply a strict scrutiny analysis, rather than the *Lemon* test, because § 1402(g) involves disparate treatment of different religious sects. *See Larson v. Valente,* 456 U.S. 228, 246, 252, 102 S.Ct. 1673, 1684, 1687, 72 L.Ed.2d 33 (1982) (strict scrutiny applies to laws discriminating among religions). In *Larson,* the Supreme Court applied strict scrutiny to a statute governing reporting requirements for charitable organizations which initially exempted all churches from the reporting requirement, but was later amended to exempt only those churches receiving more than 50% of their contributions from members or affiliated organizations. *Id.* at 230–32, 102 S.Ct. at 1676–77. The legislative history demonstrated that the statute was drafted with "the explicit intention of including particular religious denominations and excluding others." *Id.* at 254, 102 S.Ct. at 1688. In concluding that strict scrutiny should apply, the Court noted that the Minnesota statute "makes explicit and deliberate distinctions between different religious organizations." *Id.* at 246 n. 23, 102 S.Ct. at 1685 n. 23. In *Larson,* the effect of the statute was to discriminate among religions, and *in effect,* the statute was a judgment that some religions were worthy of exemption and others were not. *See id.* at 246, 252–55, 102 S.Ct. at 1684, 1687–89.

■ Unlike the statute in *Larson,* § 1402(g) is not facially discriminatory. Instead, it grants a religious exemption subject to a condition—coverage in a private welfare plan. The condition is not intended to discriminate among religions, but is intended to ensure the viability of the Social Security system and the coverage of all individuals in a public or private welfare plan. Thus, the *Lemon* test applies. *Cf. Board of Ed. of Kiryas Joel Village School Dist. v. Grumet,*

— U.S. ——, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994) (avoiding the *Lemon* test entirely).[5]

## C. *Due Process and Equal Protection*

Droz argues that § 1402(g) violates his equal protection rights under the Fifth Amendment Due Process Clause because the government has not demonstrated a compelling reason for exempting some religious groups and not others. This argument fails.

■ For equal protection purposes, heightened scrutiny is applicable to a statute that applies selectively to religious activity only if the plaintiff can show that the basis for the distinction was religious, not secular. If the basis for the distinction is secular, then this court "review[s] the statute to determine whether it 'classif[ies] the persons it affects in a manner rationally related to legitimate governmental objectives.'" *Weinfield v. United States*, 8 F.3d 1415, 1419 (9th Cir. 1993) (analyzing Social Security offset to surviving spouse's military pension and quoting *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981)). As discussed above, the basis for § 1402(g)'s exemption is secular: to preserve the integrity of the Social Security system and to ensure that all persons are covered by a welfare plan. Courts that have addressed due process and equal protection challenges to § 1402(g) have concluded that this justification is rationally related to legitimate governmental objectives. *See Bethel Baptist Church v. United States*, 822 F.2d 1334, 1341–42 (3d Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 422 (1988); *Templeton v. Commissioner*, 719 F.2d 1408, 1413–14 (7th Cir.1983); *Ward v. Commissioner*, 608 F.2d 599, 602 (5th Cir.1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 272 (1980).[6]

## II

Droz argues that before it addressed his constitutional challenges to § 1402(g), the tax court should have required the IRS to rule on his Form 4029 application for an exemption from Social Security self-employment taxes. Droz argues that he attempted to exhaust administrative remedies by filing an application for exemption, but that the IRS never addressed his application. Droz claims that because he did not know whether and on what basis the IRS would deny his application, it was unfair to require him to argue that his failure to qualify for an exemption violated his constitutional rights.

In addressing this argument, the tax court stated that Droz's application appeared to be untimely. The tax court further held that, even if the application was timely, the IRS was not required to act on it. The tax court reasoned that, because Droz had not demonstrated his entitlement to an exemption, the tax court proceeding provided an adequate forum in which to contest the deficiency and to address Droz's constitutional challenges to § 1402.

■ The government concedes that the tax court's statement regarding the timeliness of Droz's application was wrong. Nevertheless, we do not believe that the government's failure to render a decision on his application violated Droz' due process rights. In this case, Droz does *not* maintain that he qualifies for an exemption under the statute. His only arguments for an exemption are constitutional and, consequently, were inappropriate for resolution through the resolution procedure described in § 1405(g)(1). The tax court was the appropriate forum for

---

**5.** We emphasize that our holding is a limited one. We conclude only that § 1405(g)(1)(D)'s limited exemption to people belonging to groups that make provisions for their dependent members does not violate the Establishment Clause. It is undisputed that Droz is not a member of any such group. Therefore it is not necessary for us to decide the constitutionality of any other restrictions contained in § 1405(g)—particularly the provisions limiting the exemption to groups having "established tenets," 26 U.S.C. § 1402(g)(1)(C), and to sects that have been in existence at all times since December 1, 1950.

26 U.S.C. § 1402(g)(1)(E). Nor do we need to decide whether it would violate the Establishment Clause to deny the exemption to people who, though members of no religious sect, are members of another group that makes provision for its dependent members. *See Jaggard*, 582 F.2d at 1190.

**6.** As discussed in § I(A) of this opinion, even if a heightened scrutiny applies, the government has articulated a compelling interest to justify the distinction, and the exemption is narrowly tailored to meet that interest.

the initial resolution of Droz's claims. Thus, there was no due process violation in the government's failure to respond to his application for an exemption.

Droz also argues that by raising the issue of the timeliness of the application sua sponte, the tax court acted as a de facto attorney for the IRS and thus denied Droz due process. This argument fails. Droz raised the issue of the IRS's failure to address his application, and in any event, the tax court's remark had no effect on the outcome of the case.

**AFFIRMED.**