

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-4-1999

# Adams Lippincott v. Comm IRS

Precedential or Non-Precedential:

Docket 98-7200

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Adams Lippincott v. Comm IRS" (1999). *1999 Decisions.* Paper 56.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/56

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 4, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-7200

PRISCILLA M. LIPPINCOTT ADAMS,
        Appellant

v.

COMMISSIONER OF INTERNAL REVENUE

ON APPEAL FROM THE
UNITED STATES TAX COURT
(Docket Nos. 96-15535 and 97-3437)
Tax Court Judge: Honorable Maurice B. Foley

Argued January 14, 1999

Before: GREENBERG and RENDELL, Circuit Judges,
and DEBEVOISE, District Judge*

(Filed: March 4, 1999)

Peter Goldberger, Esquire (Argued)
James H. Feldman, Jr., Esquire
50 Rittenhouse Place
Ardmore, PA 19003
 Attorneys for Appellant

_____

*Honorable Dickinson Debevoise, United States Senior District Court
Judge for the District of New Jersey, sitting by designation.

Loretta C. Argrett, Esquire
Assistant Attorney General
Michelle B. O'Connor, Esquire
 (Argued)
Gilbert S. Rothenberg, Esquire
Tax Division, Department of Justice
P.O. Box 502
Washington, DC 20044
 Attorneys for Appellee

OPINION OF THE COURT

RENDELL, Circuit Judge.

Priscilla Adams claims that Religious Freedom Restoration Act ("RFRA") requires accommodation of her religious beliefs so that her tax payments do not fund the military. She also argues that RFRA and the free exercise clause mandate a finding that her religious beliefs constitute "reasonable cause" under 26 U.S.C. S 6651 for her failure to file returns or pay tax and an "unusual circumstance" which makes it "against equity and good conscience" for the Commissioner to impose the penalty for failure to estimate under 26 U.S.C. S 6654.

I. Factual and Procedural History

The facts are not in dispute. Adams is a devout Quaker; she currently works as a "Peace Field Secretary" for the Philadelphia Yearly Meeting of the Religious Society of Friends. She sincerely believes that participation in war is contrary to God's will, and hence, that the payment of taxes to fund the military is against the will of God. From 1985 to 1989, Adams declared herself exempt from taxation, so no federal income tax would be withheld from her pay. In 1989, the IRS sent a letter to her employer, the Philadelphia Yearly Meeting, directing it to withhold taxes from her salary as if she were married and claiming one withholding allowance.

Adams has taken pains to ensure that she does not profit from her tax protests and to demonstrate that her beliefs

2

regarding refusal to pay taxes are sincere and are the result of being called or directed by God, in that she has been tested and challenged by "clearness committees" of members of her Meeting that have been convened to examine her beliefs on this topic. They have determined that the course of her conduct is the result of a"leading" from God. She asserts that she would voluntarily pay all of her federal income taxes if the money she paid were directed to a fund that supported only non-military spending, or if her payments could be directed to non-military expenditures, or that, with the consultation of a clearness committee, she would be willing to consider any other form of accommodation of her beliefs that could be offered by the government.

The Commissioner assessed deficiencies and penalties against Adams for the years 1988, 1989, 1992, 1993, and 1994. The Tax Court determined that Adams was not exempt from the payment of taxes under RFRA and was liable for the deficiencies and penalties assessed against her, relying on United States v. Lee, 455 U.S. 252 (1982), and other case law preceding Employment Division v. Smith, 494 U.S. 872 (1990). Adams now appeals to this court. We have jurisdiction pursuant to 26 U.S.C. S 7482(a) (1994). Our review is plenary, as all of the issues raised are matters of law. See Geisinger Health Plan v. Commissioner, 30 F.3d 494, 498 (3d Cir. 1994); Lazore v. Commissioner, 11 F.3d 1180, 1182 (3d Cir. 1993).

II. Discussion

A. RFRA Claim

The parties do not contest the constitutionality or the applicability of RFRA to the case at hand. They agree that RFRA applies to the federal government, as Boerne v. Flores, 117 S. Ct. 2157 (1997), held only that RFRA was unconstitutional as applied to the states under section 5 of the Fourteenth Amendment. For the purposes of this appeal, we assume without deciding that RFRA is

3

constitutional as applied to the federal government. See
Alamo v. Clay, 137 F.3d 1366, 1367 (D.C. Cir. 1998).[1]

RFRA provides:

> (a) In general
>
> Government shall not substantially burden a person's
> exercise of religion even if the burden results from a
> rule of general applicability, except as provided in
> subsection (b) of this section.
>
> (b) Exception
>
> Government may substantially burden a person's
> exercise of religion only if it demonstrates that
> application of the burden to the person --
>
> (1) is in furtherance of a compelling governmental
> interest; and
>
> (2) is the least restrictive means of furthering that
> compelling governmental interest.

_____

1. In general, courts that have addressed the question of
constitutionality have found that RFRA is constitutional as applied to the
federal government. See In re Young, 141 F.3d 854 (8th Cir.), cert.
denied, 119 S. Ct. 43 (1998); see also EEOC v. Catholic Univ. of America,
83 F.3d 455, 468-70 (D.C. Cir. 1996) (finding RFRA constitutional as
applied to Title VII, but relying on Fifth Circuit's decision in Boerne);
but
see Boerne, 117 S. Ct. at 2171 (Stevens, concurring, questioning
Establishment Clause implications of RFRA); 141 F.3d at 862-68 (Bogue,
dissenting); United States v. Grant, 117 F.3d 788, 792 n.6 (5th Cir. 1997)
(questioning RFRA's viability in the federal context); In re Gates, 212
B.R.
220 (Bankr. W.D.N.Y. 1997) (finding that Boerne overruled RFRA
altogether). Some commentators have noted that RFRA may be
unconstitutional as applied to federal law. See  Marci Hamilton, The
Religious Freedom Restoration Act is Unconstitutional, Period, 1 U. Pa. J.
Const. L. 1 (1998); Aurora R. Bearse, Note, RFRA: Is it Necessary? Is it
Proper?, 50 Rutgers L. Rev. 1045 (1998); Edward J.W. Blatnik, Note, No
RFRAF Allowed: The Status of the Religious Freedom Restoration Act's
Federal Application in the Wake of City of Boerne v. Flores, 98 Colum. L.
Rev. 1410 (1998); but see Thomas C. Berg, The Constitutional Future of
Religious Freedom Legislation, 20 U. Ark. Little Rock L.J. 715 (1998)
(arguing that RFRA is constitutional as applied to the federal
government).

Adams argues that under RFRA, she is exempt from federal income tax for the years in which she has been assessed a deficiency, because requiring her to pay these taxes substantially burdens her religious beliefs. She concedes that the government has a compelling interest in the collection of taxes, but contends that the IRS failed to meet its burden under RFRA of proving that it could not accommodate her, that is, that there is no less restrictive means of furthering the government's interest. She argues that this failure of proof requires this court to reverse the Tax Court and find that Adams owes no taxes for the years in question, and that she is not required to pay income taxes so long as the Commissioner does not act to accommodate her objections. Adams contends that she is not asking to be exempted from the payment of taxes altogether, but that she wants her beliefs to be "accommodated," because RFRA requires that the IRS accommodate her objection, unless the refusal to do so is the "least restrictive means" for achieving the government's compelling interest in tax collection. The Commissioner accepts Adams's acknowledgment that the government has a compelling interest in the collection of taxes, and urges us to find that the current system -- uniform and mandatory in nature -- is the least restrictive means of furthering that interest.

There is little doubt that RFRA was enacted as a direct response to Employment Division v. Smith, and to restore the tests that were routinely employed before the Supreme Court's ruling that neutral, generally applicable laws may impinge on religious practices, even in the absence of a compelling state interest. See 494 U.S. at 882-84; Boerne, 117 S. Ct. at 2161. RFRA requires courts to employ the test set forth above in the statutory language. First, the claimant must demonstrate a "substantial burden" on her exercise of her religious beliefs. If she does so, the burden shifts to the government to demonstrate that the regulation or practice at issue furthers a "compelling interest," and that it furthers that interest by the "least restrictive means." See S 2000bb-1; Small v. Lehman, 98 F.3d 762, 767 (3d Cir. 1996), overruled by 117 S. Ct. 2157 (1997).[2]

_____

2. Small was overruled by Boerne. However, we use this case and other cases applying RFRA to state institutions and laws as a guide to how we should interpret the statute, although we realize we are not bound by their dictates.

5

In enacting RFRA, Congress specifically announced its intent to "restore" the "compelling interest" test set forth in Sherbert v. Verner and Wisconsin v. Yoder:

> The purposes of this chapter are --
>
> (1) to restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and
>
> (2) to provide a claim or defense to persons whose religious exercise is substantially burdened by the government.
>
> S 2000bb(b).

However, Congress's intent with regard to the precise contours of the elements of the RFRA test is a somewhat different matter, as neither the statutory provisions, the legislative history, nor the floor debates indicate exactly how the elements of the test are defined, or are defined in relation to the pre-Smith case law. See S 2000bb(a); S 2000bb-2; S. Rep. No. 103-111 (1993), at 5-9, 15-16, reprinted in 1993 U.S.C.C.A.N. 1893, 1894-98, 1904-05; see also 139 Cong. Rec. S1415-01, S14515-16 (daily ed. Oct. 27, 1993) (statements of Senator Chaffee); 139 Cong. Rec. S14461-01, S14462, S14468, S14469 (daily ed. Oct. 26, 1993) (statements of Senators Feingold, Lieberman, and Bradley); 139 Cong. Rec. S14350-01, S14350, S14353 (daily ed. Oct. 26, 1993) (statements of Senators Kennedy and Hatch); 139 Cong. Rec. H2356-03, H2356-59, H2360-61 (daily ed. May 11, 1993) (remarks of Representatives Brooks Edwards, Fish, Hughes, and Schumer); The Religious Freedom Restoration Act: Hearing on S. 2969 Before the Comm. on the Judiciary of the United States Senate, 102nd Cong. 2, 129-35 (Sept. 18, 1992). While prior cases touched on one or more of the aspects of the RFRA test, these elements -- substantial burden, compelling interest, least restrictive means -- did not constitute a comprehensive standard, let alone a uniform or established test, prior to Smith.3  The instant case presents

_____

3. The Supreme Court stated in Boerne,"the Act imposes in every case a least restrictive means requirement -- a requirement that was not used

6

the issue, as to whether, and if so, how, we should construe RFRA in light of prior case law. The legislative history of both the House and the Senate versions of RFRA contain explicit indications that prior case law is central to the understanding of the compelling interest test:

> The committee wishes to stress that the act does not express approval or disapproval of the result reached in any particular court decision involving the free exercise of religion, including those cited in the act itself. This bill is not a codification of the result reached in any prior free exercise decision but rather the restoration of the legal standard that was applied in those decisions. Therefore, the compelling interest test generally should not be construed more stringently or more leniently than it was prior to Smith.

> S. Rep. No. 103-111 at 9; H.R. Rep. No. 103-88 at 21 (1993).4

_____

in the pre-Smith jurisprudence RFRA purported to codify." See 117 S. Ct. at 2171. We note that this "element" has in fact appeared sporadically in those terms or as a "narrowly tailored" requirement. See Smith, 494 U.S. at 894-95 (O'Connor, concurring) (noting that in free exercise cases, "we have respected both the First Amendment's express textual mandate that the governmental interest in regulation of conduct by requiring the government to justify any substantial burden on religiously motivated conduct by a compelling state interest and by means narrowly tailored to achieve that interest," citing Hernandez v. Commissioner, 490 U.S. 680, 699 (1989); Lee, 455 U.S. at 257-58, cited in S. Rep. 103-111 at 7; see also Hobbie v. Unemployment Appeals Comm'n., 480 U.S. 136, 140-42 (1987) (strict scrutiny applies to free exercise unemployment compensation challenge); Thomas v. Review Bd., 450 U.S. 707, 718 (1981) ("The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest.")

4. The floor debates contain an extended "colloquy" between Senators Grassley and Hatch that occurred during the Judiciary Committee markup of the bill, which states in pertinent part:

Grassley: Does this bill change the way courts assess a "compelling state interest"? Will it still be up to the judge -- who will look at all the facts
in the case -- to say whether there is a compelling interest? In other words, this bill does not purport to legislate a definition of compelling interest, does it?

7

The legislative history accompanying the Senate bill also includes the following directive: "The committee expects that the courts will look to free exercise cases decided prior to Smith for guidance in determining whether the exercise of religion has been substantially burdened and the least restrictive means have been employed in furthering a compelling governmental interest." S. Rep. 103-111 at 8-9.5 Cases decided before Smith involving application of the standards to the tax system, or to situations analogous to the tax system are, therefore, instructive. In United States v. Lee, the Supreme Court rejected a free exercise challenge to the imposition of social security taxes based on the fact that mandatory participation was necessary to the functioning of the social security program, and that a voluntary system would be impossible to administer. See 455 U.S. at 257-59. In so finding, the Court noted:

> Religious beliefs can be accommodated, see, e.g., Thomas, supra; Sherbert, supra, but there is a point at which accommodation would "radically restrict the operating latitude of the legislature." . . . Unlike the situation presented in Wisconsin v. Yoder, supra, it would be difficult to accommodate the comprehensive

---

Hatch: RFRA reestablishes a very familiar and traditional standard of review that the courts have been applying since the 1963 decision Sherbert v. Verner. That is why we do not attempt to define the standard in the bill. This bill does not dictate the proper result in a particular free exercise case nor does it identify specific governmental interests that are compelling. The courts will continue to determine whether burdens on religious exercise are justified, based upon a consideration and weighing of all relevant facts and circumstances. Historically, the courts have had little difficulty identifying important governmental interests. For example, the courts have found eradication of racial discrimination to be a compelling governmental interest.

139 Cong. Rec. S14461-01, S14470 (daily ed. Oct. 27, 1993).

5. In enacting RFRA, Congress seized upon language from Supreme Court opinions to create a statutory cause of action. In determining the bounds of Congressional intent in creating that statutory right we look to Congress's statements about pre-Smith case law as instructive for our purposes, namely, to "say what the law is." Marbury v. Madison, 1 Cranch 137, 177 (1803).

social security system with myriad exceptions flowing from a wide variety of religious beliefs. The obligation to pay the social security tax initially is not fundamentally different from the obligation to pay income taxes; the difference -- in theory at least-- is that the social security tax revenues are segregated for use only in furtherance of the statutory program. There is no principled way, for purposes of this case, to distinguish between general taxes and those imposed under the Social Security Act. If, for example, a religious adherent believes war is a sin, and if a certain percentage of the federal budget can be identified as devoted to war-related activities, such individuals would have a similarly valid claim to be exempt from paying that percentage of the income tax. The tax system could not function if denominations were allowed to challenge the tax system because tax payments were spent in a manner that violates their religious belief. . . . Because the broad public interest in maintaining sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax.

455 U.S. at 259-60.

In Hernandez, members of the Church of Scientology raised several challenges to the disallowance of claimed exemptions for the monies they had paid for spiritual training classes and sessions, including a free exercise challenge. In upholding the disallowance of exemptions in the face of their free exercise challenge, the Hernandez court relied on Lee:

[O]ur decision in Lee establishes that even a substantial burden would be justified by the "broad public interest in maintaining a sound tax system," free of "myriad exceptions flowing from a wide variety of religious beliefs." 455 U.S. at 260. . . . That these cases involve federal income taxes, not the Social Security system, is of no consequence. Ibid. The fact that Congress has already crafted some deductions and exemptions in the Code also is of no consequence, for the guiding principle is that a tax "must be uniformly

9

applicable to all, except as Congress provides explicitly otherwise." Id. at 261.

490 U.S. at 699 (emphasis added in original).

Lee and Hernandez are both part of a line of cases that have refused to recognize free exercise challenges to the payment of taxes or penalties imposed due to a refusal to pay taxes as a protest against the military activities of the United States. See, e.g., Lull v. Commissioner, 602 F.2d 1166 (4th Cir. 1979) (per curiam); Graves v. Commissioner, 579 F.2d 392 (6th Cir. 1978); First v. Commissioner, 547 F.2d 45 (7th Cir. 1976) (per curiam); Autenreith v. Cullen, 418 F.2d 586 (9th Cir. 1969); see also Bethel Baptist Church v. United States, 822 F.2d 1334 (3d Cir. 1987) (social security taxes); Kahn v. United States , 753 F.2d 1208, 1215–16 (3d Cir. 1985); McLaughlin v. Commissioner, 832 F.2d 986 (7th Cir. 1987); Nelson v. United States, 796 F.2d 164 (6th Cir. 1986); McKee v. United States, 781 F.2d 1043 (4th Cir. 1985); Collett v. United States , 781 F.2d 53 (6th Cir. 1985) (per curiam); Jenney v. United States, 755 F.2d 1384 (9th Cir. 1985); Wall v. United States, 756 F.2d 52 (8th Cir. 1985); Welch v. United States, 750 F.2d 1101 (1st Cir. 1985); Ballinger v. Commissioner, 728 F.2d 1287 (10th Cir. 1984); cf. United States v. Malinowski, 472 F.2d 850 (3d Cir. 1973) (First Amendment an insufficient defense to tax evasion).6

In the case before us, the Tax Court stated that the "uniform, mandatory participation in the Federal income tax system, irrespective of religious belief, is a compelling governmental interest. . . . As a result, requiring petitioner's participation in the Federal income tax system is the only, and thus the least restrictive, means of furthering the Government's interest." See Adams v. Commissioner, 110 T.C. 137, 139 (1998), citing Hernandez, 490 U.S. at 699–700; Lee, 455 U.S. at 260. Adams argues that the tax court misconstrued the compelling interest, and did so in so

_____

6. In discussing instances in which the "compelling interest" test has been used to uphold governmental practices, Congress cited cases disallowing the availability of tax exemptions on the basis of religious practice and belief, namely, Hernandez, Lee, and Bob Jones University v. United States, 461 U.S. 574 (1983). See S. Rep. No. 103–111 at 5.

10

broad a manner, that the court did not address the "least restrictive means" prong. She contends that the government did not meet its burden in this regard. We disagree.

Mindful of the comments of both the House and Senate, while we are not bound by the results in Lee and Hernandez, we cannot help but be guided by their reasoning in determining whether the least restrictive means have been employed to further the government's compelling interest. Viewing the requirements of RFRA through the helpful lens of pre-Smith case law, we conclude that the nature of the compelling interest involved-- as characterized by the Supreme Court in Lee-- converts the least restrictive means inquiry into a rhetorical question that has been answered by the analysis in Lee. The least restrictive means of furthering a compelling interest in the collection of taxes -- a compelling interest that Adams has conceded -- is in fact, to implement that system in a uniform, mandatory way, with Congress determining in the first instance if exemptions are to built into the legislative scheme. The question of whether government could implement a less restrictive means of income tax collection surfaced in pre-Smith case law and was answered in the negative based on the practical need of the government for uniform administration of taxation, given particularly difficult problems with administration should exceptions on religious grounds be carved out by the courts. See Lee, 455 U.S. at 259-60. We acknowledge the sincerity of Adams's beliefs, but as the Supreme Court noted in Lee, we can easily imagine a plethora of other sects that would also have an equally legitimate concern with the usage of tax dollars to fund activities antithetical to their religion. See 455 U.S. at 259. We also note that the same concerns with religious pluralism that prompted the passage of RFRA have also prompted past courts' reluctance to become involved in determining whether a claimant's beliefs are "sincerely held," due to the multiplicity of beliefs in this country; these concerns also fortify our resistance to court-created exemptions to the income tax system. See Lee, 455 U.S. at 259; Lull, 602 F.2d at 1168-69; cf. Kahn, 753 F.2d at 1214.

Our approach to this particular form of tax challenge under RFRA is consistent with that of the Ninth Circuit

11

Court of Appeals, the only other circuit court to have wrestled with this issue in a similar factual context. In Goehring v. Brophy, a group of college students challenged the collection of student fees under RFRA, as those fees subsidized a health insurance plan that covered abortion services. 94 F.3d 1294, 1297 (9th Cir. 1996), cert. denied, 117 S. Ct. 1335 (1997), overruled by 117 S. Ct. 2157. In analyzing the "least restrictive means" prong of the RFRA test, the court analogized the challenge to university funding to that of free exercise challenges to the government's use of tax dollars. See id. at 1300. The court then looked to Lee as its guide, and found that the fiscal vitality of the university fee system would be undermined if the plaintiffs were exempted from paying their fees on free exercise grounds, as mandatory participation was necessary to ensure the survival of the student health insurance program. See id. The court also relied on the reasoning in Autenreith, a pre-Lee war tax protester case, as persuasive authority for its decision that mandatory student participation in a health insurance scheme was the least restrictive means of accomplishing the University's goals. 94 F.3d at 1301-02. We also find this reasoning instructive:

> The Income Tax Act does not `aid one religion, aid all religions, or prefer one religion over another.' Not does it punish anyone `for entertaining or professing religious beliefs or disbeliefs' . . . . It taxes plaintiffs like all others, because they are citizens or residents who have taxable income. On matters religious, it is neutral. If every citizen could refuse to pay all or part of his taxes because he disapproved of the government's use of the money, on religious grounds, the ability of the government to function could be impaired or even destroyed. . . . There are few, if any governmental activities to which some person or group might not object on religious grounds.
>
> 418 F.2d at 588-89, cited in 94 F.3d at 1301-02.

In another case decided by the Court of Appeals for the Ninth Circuit, Droz v. Commissioner, the appellant had challenged the assessment of unpaid self-employment social security taxes under the free exercise clause,

12

claiming that he had religious objections to the social security system. 48 F.3d 1120, 1121 (9th Cir. 1995). The court determined that the RFRA test should be applied to his claim, and then looked to Lee as the determinative case in analyzing his claim. See id. at 1123. The Droz court denied his claim, noting that although compulsory participation in the social security system interfered with his free exercise rights, allowing him to opt out of the system on religious grounds would threaten the stability of the social security system by opening the door to myriad religious exceptions. See id. at 1123–24; cf. Sherbert, 374 U.S. at 408–09 (noting that administrative problems rendering a scheme unworkable could be the basis for denial of religious accommodation).7

Adams also argues that a later Congressional enactment of the exemption the Supreme Court refused to allow in Lee demonstrates that the Commissioner can and should accommodate religion through a series of exemptions or alternative approaches to tax collection or at least should prove why such religiously–based exemptions are not feasible. However, in making this argument, Adams

_____

7. A number of RFRA cases arising in other factual contexts also demonstrate a sensitivity to the influence of pre–RFRA case law on the analysis of claims at hand. For example, in the context of RFRA challenges to prison policies and regulations, courts found that they still owe substantial deference to the judgment of prison administrators –– as was the practice under prior case law in determining the interests being furthered and means employed. See Lawson v. Singletary, 85 F.3d 502, 512 (11th Cir. 1996), overruled by 117 S. Ct. 2157 (1997) (finding that the "least restrictive means" prong of RFRA was coextensive with the Supreme Court's decision in Procunier v. Martinez, 416 U.S. 396 (1974), in which the "limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved."); Jolly v. Coughlin, 76 F.3d 468, 476 (2d Cir. 1996), overruled by 117 S. Ct. 2157 (1997) (stating in its analysis of a challenge to TB regulations that its inquiry would occur "against the backdrop of prior decisions recognizing that courts are ill–equipped to substitute their judgments on matters of prison administration for those of prison authorities"); Hamilton v. Schiro, 74 F.3d 1545, 1554 n.9 (8th Cir. 1996), overruled by 117 S. Ct. 2157 (1997) (court looks to Supreme Court precedent, RFRA's legislative history, and its own case law for guidance in interpreting RFRA).

misconstrues the nature of the tax system itself. We do not doubt that such legislative enactments can and do occur, but tax exemptions are a matter of legislative grace, see Lull, 602 F.2d at 1168, citing New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). It does not follow from Congressional action on such matters that the Commissioner or the courts are therefore encouraged to carve out exceptions to the statutory scheme.8

Adams contends further that a finding against her is tantamount to exempting the IRS from RFRA altogether. We disagree. She has contested the current system of income tax collection on the basis of her religious beliefs, and the result this court reaches in evaluating her particular challenge is dictated by prior case law. This finding does not preclude the application of RFRA to the IRS in other factual contexts. In sum, we find that the Tax Court engaged in an appropriate analysis of Adams's RFRA claim based upon United States v. Lee, and that appellee was not required to produce evidence under the "least restrictive means" prong of RFRA in order to prevail.

B. Liability for Penalties Assessed

Under 26 U.S.C. S 6651(a), if a taxpayer fails to file, a penalty will be added unless the taxpayer can demonstrate 1) lack of willful neglect, and 2) reasonable cause. Willful neglect may be read as "meaning a conscious, intentional failure or reckless indifference." See United States v. Boyle, 469 U.S. 241, 245 (1985). Under the case law and appropriate regulations, in order to demonstrate "reasonable cause," a taxpayer must demonstrate that she exercised ordinary care and prudence but nevertheless was unable to file the return within the time allowed. 9 See id.;

_____

8. The fact that Adams has suggested a number of alternative modes of tax collection for herself (religiously-based checkoffs on the tax forms, or
a separate non-military based fund for tax monies) is beside the point. As Justice Blackmun noted, "A judge would be unimaginative indeed if he could not come up with something a little less`drastic' or a little less
`restrictive' in almost any situation, and thereby enable himself to vote to
strike legislation down." Illinois State Bd. of Elections v. Socialist Workers
Party, 440 U.S. 173, 188-89 (1979) (concurring).

9. A "reasonable cause" exception on the basis of religious opposition to war is somewhat difficult to claim from the outset, due to the existence

Sanderling, Inc. v. Commissioner, 571 F.2d 174, 178–79 (3d Cir. 1978). Whether the elements that constitute "reasonable cause" are present in "a given case is a question of fact, but what elements must be present to constitute `reasonable cause' is a question of law." Boyle, 469 U.S. at 249 n.8.

Adams claims that Scott v. Commanding Officer, 431 F.2d 1132, 1136 (3d Cir. 1970), a conscientious objector case, indicates that she was compelled by her beliefs not to file, and that as a result, she has demonstrated reasonable cause under the statute, because the beliefs inducing her not to file her returns were so powerful that her actions were beyond her control. In so claiming, she cites to language in Scott stating that: "beliefs of conscience are always beyond one's control; one cannot sincerely turn his conscience on and off at will." 431 F.2d at 1136. Similarly, Adams claims that the waiver provision of section 6654(e)(3) for "unusual circumstances" applies to her case, claiming that her adherence to religious beliefs and subsequent refusal to pay taxes —— the "reasonable cause" argument set forth above —— is a sufficiently unusual circumstance to nullify the penalty, despite the fact that it is somewhat rare for a court to recognize a "reasonable cause" exception as an "unusual circumstance" that precludes a section 6654(a) penalty. See In re Carlson, 126 F.3d 915, 921 (7th Cir. 1997), cert. denied, 118 S. Ct. 1388 (1998) (listing cases); Webster v. United States, 375 F.2d 814 (Ct. Cl. 1967) (finding a reasonable cause exception due to changes in tax code and taxpayer's lack of information as rural landowner).10

_____

of cases upholding the assessment of a "frivolous return" penalty under 26 U.S.C. S 6702 against persons claiming "war tax" deductions or exemptions. See Nelson, 796 F.2d at 165–67 (addressing constitutionality of section 6702); Welch, 750 F.2d at 1108–09 (rejecting free exercise challenge to section 6702); Tax Equity and Fiscal Responsibility Act, S. Rep. 97–494 (1982), 1982 U.S.C.C.A.N. 781, 1023–24 (discussing protest returns, including "war tax" protest returns, as necessitating the enactment of section 6702).

10. Adams also argues that the statutory scheme that permits penalties if the taxpayer demonstrates "reasonable cause" or "unusual circumstances" has constitutional implications. She contends, relying on

15

We find Adams's arguments appealing, but ultimately unconvincing. She has misconstrued Scott; the focus of the court's analysis in Scott was on the sincerity of the beliefs of the individual in question -- the sincerity of Adams's beliefs is not in question. However, despite the sincerity of those beliefs, her claim has returned this court to a well-established line of cases involving challenges to the collection of taxes on religious grounds. Although Adams's beliefs may be unusual as compared to the general population, the very body of case law relating to war tax protesters indicates that in the realm of tax litigation, she is one of many. As a result, her "compulsion" argument affords her no excuse, as the prior plaintiffs were also compelled by religious belief, but, like Adams, made the difficult decision to act in a manner contrary to law. Moreover, Adams is asking this court to draw a distinction between holding sincerely felt political and religious beliefs and facing the consequences of those beliefs; we have been and continue to be reluctant to make such a distinction. We have noted, in slightly different contexts, that plaintiffs engaging in civil disobedience through tax protests must

_____

language in Smith, that where a governmental entity has in place a system of "individual exemptions," the failure to extend those exemptions to a case of religious hardship constitutes discrimination on the basis of religious belief. 494 U.S. at 884. The "reasonable cause" exception, according to Adams, is one such "individual exemption," and therefore, the assessment of a penalty against her when she has demonstrated "reasonable cause" is unconstitutional. The concept of "individual exemptions" in Smith is not the same as "reasonable cause" in the I.R.C., and we have little difficulty finding that the imposition of penalties on Adams does not constitute discrimination on the basis of her religion. The exemptions at issue here are uniform and facially neutral; the exemption at issue in Sherbert allowed for special protection for employees opposed to working on Sundays, and allowed the Commission making the determination to take religious and personal beliefs into account; here, the exemptions at issue are uniform and facially neutral. See Sherbert, 374 U.S. at 401-03, 406-09. In terms of both statutory interpretation and constitutional interpretation, Adams's definitions of "reasonable cause" and "unusual circumstances" are outside of the bounds of what these terms mean. See McMahan v. Commissioner, 114 F.3d 366, 368-69 (2d Cir. 1997) (setting out parameters of reasonable cause exception).

pay the penalties incurred as a result of engaging in such disobedience. See Kahn, 753 F.2d at 1215–16; cf. Malinowski, 472 F.2d at 855–58.

We will affirm the decision of the Tax Court.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

17