114 T.C. No. 32


UNITED STATES TAX COURT



JOHN W. AND FAYTHE A. MILLER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 12310-98.                    Filed June 23, 2000.

    Ps claimed dependency exemptions on their 1996
joint Federal income tax return without furnishing
SSN's for their children, as required under sec.
151(e), I.R.C.  Ps seek relief from the SSN requirement
because of their religious beliefs in opposition to
using SSN's.  Held:  the SSN requirement is the least
restrictive means of achieving the Government's
compelling interests in implementing the Federal tax
system in a uniform, mandatory way and in detecting
fraud in regard to dependency exemptions.  Accordingly,
neither the Free Exercise Clause of the First Amendment
to the Constitution nor the Religious Freedom
Restoration Act of 1993, Pub. L. 103-141, sec. 2, 107
Stat. 1488, provides a basis for excepting Ps from the
SSN requirement.

John W. and Faythe A. Miller, pro se.

Elizabeth A. Owen, for respondent.

OPINION

LARO, <u>Judge</u>:   This case is before the Court fully stipulated.  See Rule 122.  Petitioners petitioned the Court to redetermine respondent's determination of a $1,391 deficiency in Federal income tax for 1996.

The issue in this case is whether requiring petitioners to provide Social Security numbers (SSN's) for their dependent children as a condition to allowing their dependency deductions violates petitioners' right to free exercise of religion.  We hold that it does not.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue.  Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

## Background

The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference.  Petitioners resided in Sugar Land, Texas, when the petition was filed.

Petitioners are the natural parents of two children, whom they claimed as dependents on their 1996 Federal income tax return.  At the end of 1996, petitioners' children were 8 and 5 years old.  Rather than provide SSN's for their children on their return, petitioners attached a notarized affidavit declaring

their religious objection to the use of identifying numbers for their children.

Petitioners believe that SSN's are universal numerical identifiers to be equated with the "mark of the Beast" warned against in the Bible at Revelation 13:16-17. Petitioners both have SSN's and used them on their 1996 tax return but wish to avoid obtaining SSN's for their children.

Petitioners' religious objections extend only to universal identifiers and not to numbers issued for a discrete purpose. Accordingly, petitioners have offered to obtain Individual Taxpayer Identification Numbers (ITIN's) for their children and provide the ITIN's on their return. Respondent, however, refuses to issue ITIN's to petitioners' children because respondent takes the position that Treasury regulations permit issuance of ITIN's only to those who are ineligible to receive SSN's.

Except for the requirement that petitioners include their children's SSN's on their return, petitioners have met all the statutory requirements for claiming dependency exemptions in 1996. Respondent concedes that petitioners have a sincerely held religious belief which opposes the use of SSN's for their minor children, but respondent denies that he is required to accommodate that belief in administering the dependency exemption.

## Discussion

I.   The SSN Requirement

Under section 151, taxpayers are entitled to claim an exemption for each dependent child.  However, section 151(e) provides:  "No exemption shall be allowed under this section with respect to any individual unless the TIN of such individual is included on the return claiming the exemption."[1]  Thus, without providing TIN's, petitioners cannot properly claim any section 151 exemptions for their children.

Section 7701(a)(41) defines the term "TIN" for purposes of the Internal Revenue Code to mean "the identifying number assigned to a person under section 6109."  Section 6109(d) specifies that the SSN issued to an individual is the identifying number of the individual, except as otherwise specified under applicable regulations.  The regulations provide that an individual required to furnish a TIN must use an SSN unless the individual is not eligible to obtain an SSN.  See sec. 301.6109-1(a)(ii)(A) and (B), Proced. & Admin. Regs.  The regulations further specify that "Any individual who is duly assigned a Social Security number or who is entitled to a Social Security

_____

[1]Sec. 151(e) was added to the Code by the Small Business Job Protection Act of 1996 (SBJA), Pub. L. 104-188, sec. 1615(a)(1), 110 Stat. 1755, 1853, and is generally effective for returns due after Sept. 19, 1996.  However, for dependents claimed for the 1996 taxable year, the Act requires TIN's for any children born on or before Nov. 30, 1996.  See SBJA sec. 1615(d)(2), 100 Stat. 1853.

number will not be issued an IRS individual taxpayer identification number." Sec. 301.6109-1(d)(4), Proced. & Admin. Regs.[2]

SSN's are issued by the Social Security Administration of the U.S. Department of Health and Human Services (the SSA) upon application by a citizen, qualified alien, or by a parent on behalf of a qualified child. See generally 20 C.F.R. secs. 422.101 to 422.112 (2000). The issuance of an SSN entails several consequences, including (i) the creation of a record at the SSA of that person's earnings for purposes of determining the old-age and other benefits to which the person may be entitled, and (ii) establishing a unique numerical identifier for the individual for use by a variety of governmental and private entities.[3] When the SSN was first chosen as the identification

---

[2]Sec. 301.6109-1(d)(4), Proced. & Admin. Regs., was added to the regulations by T.D. 8671, 1996-1 C.B. 314, and is effective for any return, statement, or other document required to be filed after Dec. 31, 1995. Previously, respondent had issued ITIN's to taxpayers who claimed religious objections to the use of SSN's. See Wolfrum v. Commissioner, T.C. Memo. 1991-370, affd. 972 F.2d 350 (6th Cir. 1992).

[3]In addition to tax administration, SSN's are used by Federal and State Governments to administer public assistance programs, veteran's benefits, driver's licences, motor vehicle registrations, Federal student grants and loans, child support obligations, the Selective Service System, blood donations, and jury selection. SSN's are also commonly used in the private sector by credit bureaus, banks, schools, and medical recordkeepers. See Komuves, "We've Got Your Number: An Overview of Legislation and Decisions to Control the Use of Social Security Numbers as Personal Identifiers", 16 J. Marshall J.
(continued...)

number for tax purposes, the rationale for the choice was that most people already had an SSN and thus the use of that pre-existing number would relieve taxpayers of an additional burden. See H. Rept. 1103, 87th Cong., 1st Sess. 3 (1961); S. Rept. 1102, 87th Cong., 1st Sess. 3 (1961), 1961-2 C.B. 475.

II.  The Religious Freedom Restoration Act of 1993

Petitioners assert that requiring them to furnish SSN's for their children as a condition to obtaining the dependency exemptions is an unconstitutional intrusion on the free exercise of their religion.  The First Amendment to the Constitution provides, in relevant part, that:  "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  (Emphasis added.)

In Bowen v. Roy, 476 U.S. 693 (1986), the Supreme Court considered whether a Federal statute requiring applicants for Federal welfare assistance to obtain and furnish SSN's for their children was constitutional as applied to two Native American applicants who held a religious belief that the use of the number would harm their daughter's spirit.  Part III of the opinion of Chief Justice Burger, joined by two other Justices, rejected the strict scrutiny test applied by the trial court, concluding that there is no violation of the Free Exercise Clause of the First

---

[3](...continued)
Computer & Info. L. 529 (Spring 1998).

Amendment when the Government demonstrates "that a challenged requirement for government benefits, neutral and uniform in its application, is a reasonable means of promoting a legitimate public interest." Id. at 708. The four dissenting Justices would have required the Government to show that its refusal to accommodate the appellants' religious objection to the use of SSN's served a compelling State interest.[4]

In Employment Div. v. Smith, 494 U.S. 872 (1990), the Supreme Court reviewed a claim that the Free Exercise Clause permitted the ingestion of a prohibited drug, peyote, in the context of the worship of the Native American Church. In so doing, the Court held that a "neutral, generally applicable law need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." Id. at 886 n.3.

In response to Smith, Congress enacted the Religious Freedom Restoration Act of 1993 (RFRA), Pub. L. 103-141, sec. 2, 107 Stat. 1488, 42 U.S.C. secs. 2000bb to 2000bb-4 (1994).[5] A person whose religious exercise is burdened in violation of the

---

[4]Justice White wrote separately from the other three dissenters, stating simply that he believed Thomas v. Review Bd., 450 U.S. 707 (1981), and Sherbert v. Verner, 374 U.S. 398 (1963), to be controlling.

[5]In City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court held that RFRA was unconstitutional as applied to State and local laws. We assume without holding that the RFRA is constitutional as applied to the Federal Government.

RFRA "may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government". RFRA, 42 U.S.C. sec. 2000bb-1(c). A claimant under the RFRA must show that the Government "substantially burdened" his or her free exercise of religion. RFRA, 42 U.S.C. sec. 2000bb-1(a). Upon such a showing, the Government must demonstrate that the application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling interest. RFRA, 42 U.S.C. sec. 2000bb-1(b). The Government's burden is both of production and persuasion. RFRA, 42 U.S.C. sec. 2000bb-2(3).

III. Substantial Burden

Petitioners seek dependency exemptions which, over a number of years, may be worth several thousands of dollars to them. In order to secure this benefit, which is available to similarly situated parents, petitioners must obtain and use SSN's for their children. Respondent concedes this would violate a central tenet of petitioners' religion. Thus, petitioners' argument that the SSN requirement imposes a cognizable burden on their freedom of religion may find some support under First Amendment case law. See Thomas v. Review Bd., 450 U.S. 707, 717-718 (1981) ("Where the State conditions receipt of an important benefit upon conduct proscribed by a religious faith * * * a burden upon religion

exists."). But see Patterson v. Commissioner, T.C. Memo. 1989-193, affd. without published opinion 896 F.2d 544 (2d Cir. 1990) (imposing higher tax rates on taxpayer who could not divorce or legally separate because of his religious beliefs was not an unconstitutional burden on his free exercise rights); In re Turner, 193 Bankr. 548 (Bankr. N.D. Cal. 1996) (requiring use of SSN on bankruptcy forms does not impose a "substantial burden" under the RFRA on form preparer with religious objections to use of the number). Nevertheless, we do not find it necessary to determine whether petitioners' free exercise of religion is substantially burdened by the SSN requirement because, as discussed below, respondent has satisfied the compelling interest test.

IV. Compelling Government Interest Test

Under the RFRA, the Government may impose a substantial burden on the free exercise of religion if it demonstrates that the application of the burden is the least restrictive means of achieving a compelling governmental interest. See RFRA, 42 U.S.C. sec. 2000bb-1(b) (1994); Adams v. Commissioner, 110 T.C. 137 (1998), affd. 170 F.3d 173 (3d Cir. 1999).

We find that the Government has a compelling interest in effectively tracking claimed dependency exemptions. Through cross-matching of the SSN's respondent can easily identify whether an SSN has been claimed on another return for the year,

thereby detecting erroneous or fraudulent claims.  For example,
SSN's make it easier for the IRS to determine whether divorced
parents are both trying to claim their children as dependents.
Congress acknowledged this benefit in 1994, when it eliminated an
exception to the TIN requirement for dependents below a certain
age:

> The requirement that TIN's be provided with respect to each
> dependent claimed on a tax return has significantly reduced
> the improper claiming of dependents.  Requiring that TIN's
> be supplied regardless of the age of the dependent will
> further reduce the improper claiming of dependents.  [H.
> Rept. 103-826, at 196 (1994) (discussing sec. 742(b) of the
> Uruguay Round Agreements Act, Pub. L. 103-465, 108 Stat.
> 4809, 5010 (1994)).]

The use of SSN's also helps ensure that there is indeed a person
in existence to support the claimed exemption.  See U.S. General
Accounting Office, Tax Administration IRS Could Do More to Verify
Taxpayer Identities (Pub. No. GAO/GGD 95-148) (Aug. 30, 1995)
(describing the difficulty in tracking individuals without
correct TIN's in the IRS computer system).

Enforcing the SSN requirement also supports the Government's
compelling interest in implementing the Federal tax system in a
uniform, mandatory way.  See Hernandez v. Commissioner, 490 U.S.
680 (1989); United States v. Lee, 455 U.S. 252 (1982); Adams v.
Commissioner, supra.  This interest extends both to the
imposition of taxes and to the administration of the tax system.
See Steckler v. United States, 81 AFTR 2d 98-1049, at 98-1052,
98-1 USTC par. 50,219, at 83,408 (E.D. La. 1998) (requirement

under section 3401(a)(1) that taxpayer's SSN be disclosed when redeeming Treasury bonds was the least restrictive means of meeting the Government's compelling interests "in collecting taxes fairly, in administering its tax system properly, and in making sure all citizens participate in that system on equal terms").

Petitioners argue that enforcing the SSN requirement against them is not the least restrictive means of achieving these government interests because the IRS waives the SSN requirement for taxpayers who qualify for exemption from Social Security taxes under section 1402(g). This practice was acknowledged in the legislative history accompanying the enactment of the TIN requirement of former section 6109(e),[6] in the Tax Reform Act of 1986, Pub. L. 99-514 100 Stat 2085:

> The conferees note that certain taxpayers, because of their religious beliefs, are exempted from Social Security self-employment taxes (section 1402(g)). The conferees intend that these taxpayers and their dependents who currently acquire their TIN's from the IRS continue to be permitted to

---

[6]Former sec. 6109(e) required a taxpayer who claimed the deduction for the dependency exemption under sec. 151(c) to provide the dependent's TIN. Sec. 151(e) requires the same information as did former sec. 6109(e) but changes the enforcement mechanism for the TIN requirement from an information reporting penalty to a disallowance of the deduction.

do so.[7]  [H. Conf. Rept. 99-841 (Vol. II), at II-790 (1986), 1986-3 C.B. (Vol. 4) 1, 790.]

We do not find that this IRS practice establishes that accommodation is feasible in this case.  Taxpayers who are exempted from Social Security employment taxes under section 1402(g) include only those who are members of an established religious sect opposed to public or private insurance and who have waived Social Security benefits.[8]  See Wolfrum v. Commissioner, T.C. Memo. 1991-370.  The creation of a general religious exemption to the dependent TIN requirement would have a far greater impact on respondent's administration of the dependency exemption and would increase the risk of fraudulent claims being made.[9]  We cannot say that the balance struck by respondent in excusing only those who are statutorily exempted from participation in the Social Security system is constitutionally impermissible.

---

[7]Though the legislative history refers to an IRS practice of issuing ITIN's to the dependents of taxpayers exempted under sec. 1402(g), respondent acknowledged on brief that the IRS' longstanding practice has been to excuse these taxpayers from the TIN requirement entirely.  See also Chief Counsel Advice 1999-50-034 (Oct. 21, 1999).

[8]Petitioners acknowledge that they are not eligible to claim exemption under sec. 1402(g).

[9]In 1997 alone there were more than 2.5 million instances where TIN's required to claim dependency exemptions and the Earned Income and Child Care Tax Credits were either missing or did not match IRS or SSA records for the name used.  See I.R.S. News Release, IR-98-25 (Mar. 25, 1998).

We also reject petitioners' suggestion that respondent could accommodate petitioners' religious beliefs by issuing ITIN's to petitioners' children. We find that issuing ITIN's would be a less effective means of detecting fraud than requiring SSN's. For one, issuing an ITIN to an individual who is otherwise eligible to receive an SSN creates the risk that the individual will thereafter obtain an SSN. The individual will then have two TIN's, each intended by the system to be a unique identifier. In such case, cross-matching of the individual's TIN's would not reveal the existence of a duplicate claim.

We have considered all of the other arguments made by petitioners and, to the extent we have not addressed them, find them to be without merit.

In accordance with these findings, we hold that petitioners are not exempt from furnishing SSN's for their children in claiming them as dependents.

<u>Decision will be entered for respondent.</u>