T.C. Memo. 2000-210


UNITED STATES TAX COURT


SHERALD LYNN AND SUSAN JANA DAVIS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12859-98.                    Filed July 10, 2000.


Sherald Lynn Davis, pro se.

Portia Rose, for respondent.


MEMORANDUM OPINION

WOLFE, Special Trial Judge:  Respondent determined a deficiency in petitioners' Federal income tax of $3,060 for the taxable year 1996.  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether requiring petitioners to provide Social Security numbers for their children as a condition to allowing them dependency exemptions for their children violates the Religious Freedom Restoration Act of 1993; (2) whether requiring petitioners to provide Social Security numbers for their children as a condition to allowing them dependency exemptions for their children violates the Privacy Act of 1974.

The facts have been fully stipulated under Rule 122 and are so found. Petitioners resided in Liberty County, Texas, when the petition in this case was filed.

Petitioners claimed dependency exemptions for their eight children on their 1996 Federal income tax return. However, petitioners failed to provide the children's Social Security numbers on this tax return. At respondent's request, petitioners provided the children's birth certificates, immunization charts, and medical identification cards.

Respondent concedes that petitioners have met all the statutory requirements for claiming dependency exemptions for their children for 1996, except for the requirement that petitioners include their children's Social Security numbers on their return. Accordingly, pursuant to section 151(e) respondent disallowed petitioners' claimed dependency exemptions for the children.

Petitioners assert that they are not opposed to the system of Social Security insurance, but that they are religiously opposed to the issuance of Social Security numbers for their dependent children.  Respondent does not dispute that petitioners hold this belief.  Petitioners further assert that requiring them to use Social Security numbers to receive tax benefits is a violation of the Religious Freedom Restoration Act of 1993 (RFRA), Pub. L. 103-141, sec. 2, 107 Stat. 1488, 42 U.S.C. secs. 2000bb to 2000bb-4 (1994), and the Privacy Act of 1974 (Privacy Act), Pub. L. 93-579, sec. 7, 88 Stat. 1900, 5 U.S.C. sec. 552a & note (1994).

Section 151(a) provides that in the case of an individual, a deduction shall be allowed for each exemption allowed under section 151.  However, section 151(e) provides:  "No exemption shall be allowed under this section with respect to any individual unless the taxpayer identification number of such individual is included on the return claiming the exemption."[1]

---

[1]  Sec. 151(e) was added to the Code by the Small Business Job Protection Act of 1996 (SBJA), Pub. L. 104-188, sec. 1615(a)(1), 110 Stat. 1853.  Sec. 151(e) is generally effective for returns due after Sept. 19, 1996.  However, for dependents claimed for the 1996 taxable year, SBJA requires taxpayer identification numbers for any children born on or before Nov. 30, 1996.  See SBJA sec. 1615(d)(2), 110 Stat. 1853.

Section 7701(a)(41) defines the term "taxpayer identification number" (TIN) to mean "the identifying number assigned to a person under section 6109." Section 6109(d) specifies that the Social Security account number (SSN) issued to an individual is the identifying number of such individual, except as otherwise specified under applicable regulations. See sec. 6109(d). The regulations provide that an individual required to furnish a TIN must use an SSN, unless such individual is not eligible to obtain an SSN. See sec. 301.6109-1(a)(1)(ii)(A) and (B), Proced. & Admin. Regs. The regulations further provide that "any individual who is duly assigned a Social Security number or who is entitled to a Social Security number will not be issued an IRS individual taxpayer identification number." Sec. 301.6109-1(d)(4), Proced. & Admin. Regs.[2]

SSN's are issued by the Social Security Administration (SSA) of the U.S. Department of Health and Human Services upon the application by a citizen, by a qualified alien, or by a parent on behalf of a qualified child. See generally 20 C.F.R. secs.

---

[2] Sec. 301.6109-1(d)(4) Proced. & Admin. Regs., was added to the regulations by T.D. 8671, 1996-1 C.B. 314, and is effective for any return, statement, or other document required to be filed after Dec. 31, 1995. Prior to the promulgation of this regulation, respondent had issued individual taxpayer identification numbers to taxpayers who claimed religious objections to the use of Social Security numbers. See Wolfrum v. Commissioner, T.C. Memo. 1991-370, affd. 972 F.2d 350 (6th Cir. 1992).

422.101 to 422.112 (2000).  The issuance of an SSN results in the creation of (1) a record at the SSA of that person's earnings for purposes of determining the old-age, survivors, and disability insurance and other benefits that the person may be entitled to, and (2) a unique numerical identifier for the individual for use by a variety of governmental and private entities.  See Miller v. Commissioner, 114 T.C. ___ (2000); Komuves, "We've Got Your Number:  An Overview of Legislation and Decisions to Control the Use of Social Security Numbers as Personal Identifiers", 16 J. Marshall J. Computer & Info. L. 529 (Spring 1998).

The Religious Freedom Restoration Act of 1993

RFRA was enacted in response to Employment Div. v. Smith, 494 U.S. 872 (1990).  In Smith, the Supreme Court held that valid neutral laws of general applicability do not violate a person's religious rights even when the law is not supported by a compelling governmental interest.  See id.; Adams v. Commissioner, 110 T.C. 137, 138 (1998), affd. 170 F.3d 173 (3d Cir. 1999).  Prior to Smith, the Government had to demonstrate that the application of such laws to religious practices was "essential to accomplish an overriding governmental interest" or represented "the least restrictive means of achieving some compelling state interest."  Employment Div. v. Smith, supra at 899 (O'Connor, J., concurring in judgment); see also Adams v. Commissioner, supra at 138.

RFRA restores the compelling interest test, which was used prior to Smith, by prohibiting the Government from imposing a substantial burden on the free exercise of religion unless it demonstrates that application of the burden is the least restrictive means of achieving a compelling governmental interest.  See RFRA sec. 2, 107 Stat. 1896, 42 U.S.C. sec. 2000bb-1(b)(1994); Adams v. Commissioner, supra.  In evaluating whether the Government has met the compelling interest test, cases decided prior to Smith are applicable, and the test "should not be construed more stringently or more leniently than it was prior to Smith."  Adams v. Commissioner, supra at 139.  In City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court held that RFRA was unconstitutional as applied to State and local laws.  The parties do not contend, nor do we decide, that RFRA is invalid as applied to Federal law.

In this case, petitioners do not dispute that respondent's interests in preventing fraud and abuse and administering the tax system properly are compelling governmental interests.  See, e.g., Hernandez v. Commissioner, 490 U.S. 680, 699-700 (1989) ("[E]ven a substantial burden would be justified by the 'broad public interest in maintaining a sound tax system,' free of 'myriad exceptions flowing from a wide variety of religious beliefs.'" (quoting United States v. Lee, 455 U.S. 252, 260 (1982))); Miller v. Commissioner, 114 T.C. ___ (2000) (The

Government has a compelling interest in effectively tracking claimed dependency exemptions.).  Instead, petitioners contend that requiring them to use SSN's for their children is not the least restrictive means of meeting the Government's compelling interests.  Petitioners further contend that issuing their children IRS individual taxpayer identification numbers (ITIN) is a less restrictive means of meeting respondent's compelling interest than requiring SSN's.

Petitioners' argument is substantially the same as the argument recently raised in Miller v. Commissioner, supra.  In Miller, the taxpayers believed that SSN's are universal numerical identifiers that were equated with the "mark of the Beast" warned against in the Bible at Revelation 13:16-17.  In that case, the taxpayers' religious objections extended only to unique numerical identifiers and not to numbers issued for discrete purposes.  Accordingly, the taxpayers offered to obtain ITIN's for their children and provide the ITIN's on their return.  In Miller, we rejected this argument.  In so doing, we found that issuing ITIN's to such individuals, who were otherwise eligible to receive an SSN, would be less effective in detecting fraud than requiring the use of SSN's.

SSN's are unique numerical identifiers that are used to ferret out fraudulent applications through the use of computer

matching techniques. See <u>Bowen v. Roy</u>, 476 U.S. 693, 710 (1986). Through cross-matching of SSN's, respondent can detect erroneous or fraudulent claims by identifying whether an SSN has been claimed on another return for the year. See <u>Miller v. Commissioner</u>, <u>supra</u> at ___ (slip op. at 9-10). Congress acknowledged this benefit in 1994, when it eliminated an exception to the TIN requirement. See sec. 6109 as amended by Uruguay Round Agreements, Pub. L. 103-465, sec. 742, 108 Stat. 5010 (1994). The House report discussing this section states:

> The requirement that TIN's be provided with respect to each dependent claimed on a tax return has signi-ficantly reduced the improper claiming of dependents. Requiring that TIN's be supplied regardless of the age of the dependent will further reduce the improper claiming of dependents. [H. Rept. 103-826, 196 (discussing section 742(b) of the Uruguay Round Agreements Act, Pub. L. 103-465, 108 Stat. 4809, 5010 (1994)).]

Issuing an ITIN to an individual who is otherwise eligible to receive an SSN creates the risk that the individual could subsequently obtain an SSN. See <u>Miller v. Commissioner</u>, <u>supra</u> at ___ (slip op. at 12-13). In such cases, the individual would have two TIN's, each purporting to be a unique identifier. See <u>id.</u> If an individual were to have two TIN's, respondent's cross-matching program would be less effective in revealing duplicate claims than if the individual had only one identifying number. See <u>Miller v. Commissioner</u>, <u>supra</u>; U.S. General Accounting Office, Tax Administration Could Do More to Verify Taxpayer

Identities (Pub. No. GAO/GCD 95-148) (Aug. 30, 1995) (describing the difficulty in tracking individuals without correct TIN's in the IRS computer system).  For example, respondent's computer programs would not be able to detect easily whether divorced parents are both trying to claim their children as dependents. See Miller v. Commissioner, 114 T.C. at ___ (slip op. at 10). Under these circumstances, the Government does not have an obligation to tolerate the risk of individuals' fraudulently obtaining benefits.

We find that requiring petitioners to use SSN's to claim dependency exemptions for their children is the least restrictive means of furthering the compelling governmental interest of preventing fraud.  Accordingly, we hold that the required use of SSN's is not a violation of RFRA.

Privacy Act of 1974

The Privacy Act makes it unlawful for any "government agency to deny to any individual any right, benefit or privilege * * * because of such individual's refusal to disclose his social security account number."  Privacy Act sec. 7(a)(1), 5 U.S.C. sec. 552a (1994).  However, section 7(a)(1) of the Privacy Act is not applicable to "any disclosure which is required by Federal statute."  Privacy Act sec. 7(a)(2)(A).  Section 151(e) is a Federal statute that requires the disclosure of a dependent's

Social Security number.  Accordingly, petitioners' rights under section 7 of the Privacy Act are not violated by section 151(e).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.