T.C. Summary Opinion 2012-126

UNITED STATES TAX COURT

MICHAEL CLAYTON MARTIN AND NUCHANAAD CHONGKID MARTIN,
Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6069-11S.                          Filed December 26, 2012.

Michael Clayton Martin and Nuchanaad Chongkid Martin, pro sese.

Charles B. Burnett and Mark Hale Howard, for respondent.

SUMMARY OPINION

SWIFT, Judge:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]Unless otherwise noted, all section references are to the Internal Revenue

(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $9,698 in petitioners' 2008 Federal income tax and a penalty under section 6662.

After settlement of some issues, the remaining issues in this case involve a claimed $25,000 theft loss, claimed dependency exemption deductions for five children, and a section 6662 penalty.

## Background

Some of the facts have been stipulated and are so found.

In 1982 petitioner Nuchanaad Chongkid Martin immigrated to the United States from Thailand. At the time they filed their petition, petitioners resided in Utah.

In 2006 or early 2007 petitioners delivered items of property to the Embassy Freight Thailand Co., Ltd. (Embassy Freight), a storage and shipping company in Bangkok, Thailand, for long-term storage and eventual shipment to them in the United States. Petitioners claim that they purchased the property in Thailand, that

[1](...continued)
Code applicable for 2008, and all Rule references are to the Tax Court Rules of Practice and Procedure.

they paid approximately $25,000 therefor, and that the property had a fair market value of approximately $581,000, both in United States dollar equivalents.

Petitioners state that the storage of their property with Embassy Freight was based on an oral agreement with Embassy Freight, that they did not give to or receive from Embassy Freight a list of their stored property, that no fixed storage fees for the property were agreed to, and that they received no contemporaneous receipts or other documents from Embassy Freight relating to the storage of their property.

Petitioners acknowledge they never paid Embassy Freight any storage or shipping fees relating to the property. Petitioner Michael Martin, however, testified as follows about a nominal ($300-$500 U.S. dollar equivalent) payment he intended to be passed on to Embassy Freight:

> Petitioner Michael Martin: I left some money with the taxi driver, and * * * [the taxi driver] gave it to * * * [Embassy Freight] to help pay for some of the costs that were involved. Their material cost. I just wanted to --
>
> The Court: Their material cost. Help with their material cost?
>
> Petitioner Michael Martin: Well, they paid for some crates and things that were not going to be allowed to be used but it was just good will gesture, to try to pay those costs up front.

After approximately a year, in 2008 petitioners made a telephone call to Embassy Freight in Thailand and asked about their property. Petitioners were told that some of the property had been sold because of their failure to pay storage fees. The items of petitioners' property not sold by Embassy Freight apparently were never shipped or returned to them, their whereabouts are unknown, and they did not receive any compensation therefor.

A copy of a Thai police report translated into English indicates that petitioners informed Thai police that the property they had stored with Embassy Freight consisted of "personal property of * * * [their] residence" and had cost them approximately $20,000. The Thai police report also indicates that Embassy Freight personnel represented to the police that petitioners had given Embassy Freight permission to sell or otherwise dispose of the property. [2]

A note from Embassy Freight that petitioners offered into evidence (dated in 2010 and translated into rough English) states that their property was stored in a 1- by 20-foot container and consisted of fabric, foodstuffs, plastic, and metal. The note suggests the property had been in storage with Embassy Freight for a number of

---

[2]On brief respondent withdraws his objection to admission into evidence of the translated Thai police report--Exhibit 9. We admit into evidence Exhibit 9 along with Exhibit 13--a letter from a Thai friend, discussed infra.

years, that the foodstuffs had spoiled, and that the unpaid storage fees for the property were 182,500 Thai baht per year (approximately U.S. $5,000). The note also indicates that Embassy Freight received 40,000 Thai baht (approximately U.S. $1,000) on its sale of some of the property.

A note from a Thai friend of petitioners translated into English indicates that the property petitioners placed into storage with Embassy Freight was "export property".

On their original 2008 Federal income tax return petitioners claimed a $25,000 theft loss deduction relating to the property stored with Embassy Freight (computationally reduced to $18,042 under section 165(e)), and they claimed a tax overpayment of $8,144. Petitioners also claimed deductions for two exemptions for themselves (a total of $7,000).

On audit respondent, among other adjustments, disallowed petitioners' claimed $25,000 theft loss deduction and determined a deficiency of $9,698 for 2008. During the audit petitioners stated that their property stored with Embassy Freight consisted of a stove, cookware, luggage, and an ice cream machine. Petitioners claim the ice cream machine had a value of approximately $10,000 and that the approximate value of all of the property was $25,000. Petitioners, however,

provided no list or other documentation to respondent's auditor verifying what specific items of property they had stored with Embassy Freight.

On February 18, 2010, as part of their administrative appeal of respondent's audit determinations, petitioners submitted to respondent an amended 2008 Federal income tax return claiming the same $25,000 theft loss deduction and claiming five additional dependency exemption deductions not claimed on their original return--a total of $17,500 of additional dependency exemption deductions.

The five children with regard to whom petitioners claimed the additional dependency exemption deductions on their amended 2008 return are not their children; rather they are their nieces and nephews who in 2008 all lived in Thailand. They are not U.S. citizens or legal U.S. resident aliens.

As of the end of 2008 two of the children had never been in the United States, and three of the children had visited the United States in 2004 for approximately one month. The children have no U.S. Social Security numbers or U.S. taxpayer identification numbers.

In 2008 petitioner Michael Martin visited Thailand once and petitioner Nuchanaad Chongkid Martin did not visit Thailand.

Respondent did not allow the $17,500 dependency exemption deductions claimed for the five children.

Before trial petitioners offered into evidence a detailed list purporting to describe the property stored with Embassy Freight and never recovered and indicating petitioner Michael Martin's estimate of the fair market value of the property. The list is a summary description of over 200 types of property petitioners claim were included with the property stored with Embassy Freight. For example, the first five items on the list are described as follows:

| $4,700 | Cups | $47 each x 100 |
|--------|------|----------------|
| $2,599 | Bells | $6, $8, $12, x 300 |
| $2,985 | Ding Dong Bell | $4.99 x 300 |
| $1,497 | Coffee Cup w/handle 8oz | $4.99 x 300 |
| $2,397 | Stainless Drinking Cup w/o handle | $7.99 x 300 |

A few of the large dollar items on petitioners' list are described as follows:

| $ 5,249 | Backless stools | $104.99 x 50 |
|---------|-----------------|--------------|
| $ 32,950 | Gas Grills | $3,295 x 10 |
| $ 4,839 | Garment rack w 12 hangers | $483.99 x 10 |
| $ 1,627 | 48" wall shelf Steel | $162.72 x 10 |
| $ 38,000 | Merchandising Push Carts | $8,000 to $12,000 x 38 |
| $ 4,878 | Tool Boxes 18' x 18' x 36' | $487.89 x 10 |
| $ 6,610 | Tires $54.45 | $77.75 x 50 |
| $100,000 | Research and Development | $2,500 x 40 |

The list goes on and on in small font for four single-spaced pages. Petitioner Michael Martin estimated a total value of $581,224 for all of the property on the list. Petitioners have submitted no credible evidence that would indicate their cost basis in any of the property.

## Discussion

Generally, taxpayers are required to maintain and retain adequate books and records sufficient to establish claimed deductions, sec. 1.6001-1(a), (e), Income Tax Regs., and taxpayers bear the burden of proving their entitlement to claimed deductions, Rule 142(a); Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).

During respondent's audit petitioners did not provide to respondent credible documentation relating to the adjustments raised in respondent's audit, and petitioners do not qualify for a shift in the burden of proof to respondent. See sec. 7491(a)(1).

## Claimed $25,000 Theft Loss

A theft includes, but is not limited to, larceny, embezzlement, and robbery. West v. Commissioner, 88 T.C. 152, 162-163 (1987); sec. 1.165-8(d), Income Tax Regs.; Rev. Rul. 72-112, 1972-1 C.B. 60. In Edwards v. Bromberg, 232 F.2d 107, 110 (5th Cir. 1956), the Court of Appeals for the Fifth Circuit explained:

> [T]he word "theft" is * * * a word of general and broad connotation, intended to cover and covering any criminal appropriation of another's property to the use of the taker, particularly including theft by swindling, false pretenses, and any other form of guile. * * * [I]t has been long and well established that whether a loss from theft occurs * * * depends upon the law of the jurisdiction where it was sustained and that the exact nature of the crime, whether larceny or

embezzlement, of obtaining money under false pretenses, swindling or other wrongful deprivations of the property of another, is of little importance so long as it amounts to theft. [Fn. ref. and citations omitted.]

A taxpayer, however, whose property is taken by another under a procedure sanctioned by law is not entitled to a theft loss deduction because by definition no theft has occurred. Rafter v. Commissioner, 60 T.C. 1, 13 (1973) (car repossession by bank after seizure by sheriff was not theft), aff'd without published opinion, 489 F.2d 752 (2d Cir. 1974); Harcinske v. Commissioner, T.C. Memo. 1984-132 (property seizure under color of law was not a theft); Marlowe v. Commissioner, T.C. Memo. 1967-12 (failure of bailee to comply with local foreclosure law did not transform sale of goods into theft).

On the basis of the limited evidence before us on this issue, we conclude that petitioners' loss of property stored with Embassy Freight in Thailand occurred because of unpaid storage fees, not because of a theft. We also note and are troubled by the conflicting evidence regarding the nature, cost, and value of the property.

Petitioners are not entitled to the claimed $25,000 theft loss deduction.

<u>Claimed Dependency Exemption Deductions</u>

Petitioners acknowledge that in 2008 they had not adopted the five children for whom they claim dependency exemption deductions. Petitioners, however, argue that they had obtained "a modified adoption" of the children and that the children should be deemed to have lived in petitioners' household in the United States.

Petitioners state that when they visited relatives in Thailand they provided cash to the children's parents to assist with the children's support. Petitioners offered no credible evidence as to the amount of support they provided to the children. Petitioner Nuchanaad C. Martin testified as follows:

> But we gave them thousands of dollars a year to each family, with food and with education and everything. I gave them cash all the time.
>
> We went to Thailand and we gave them food, and we helped them pay for a lot of things. And we did not itemize it to see how much for this, how much for that, because it's family. When we went there, we just gave -- gave them money, and whatever they needed. We gave them medical bills and everything.

Failure to report a dependent's taxpayer identification number is an absolute bar to a taxpayer's entitlement to a dependency exemption deduction with regard to a claimed dependent. Sec. 151(e); <u>Miller v. Commissioner</u>, 114 T.C. 511, 513-519 (2000); <u>Vega v. Commissioner</u>, T.C. Memo. 2001-214, 2001 WL 899645, at

*3. Section 151(e) provides as follows: "Identifying information required.--No exemption shall be allowed under this section with respect to any individual unless the TIN of such individual is included on the return claiming the exemption."

Section 7701(a)(41) defines the term "TIN" to mean "the identifying number assigned to a person under section 6109," which in turn is the Social Security account number assigned to the person. Sec. 6109(d). The Commissioner's regulations provide that an individual who is not eligible for a Social Security number may obtain an alternative TIN upon proper application. Sec. 301.6109-1(d)(3), Proced. & Admin. Regs.

The evidence before us does not establish that petitioners, the children, or the children's parents obtained any identification numbers that would satisfy the requirements of section 151(e) or section 301.6109-1(d)(3), Proced. & Admin. Regs., with regard to the five children.

Further, petitioners have not credibly established that the five dependency exemption deductions claimed for 2008 would be allowable under the citizenship, residency, and support tests of sections 151 and 152.

Petitioners are not allowed the five dependency exemption deductions claimed for 2008.

Penalty

Section 6662(a) and (b)(2) impose a 20% accuracy-related penalty on any portion of a tax underpayment attributable to a substantial understatement of income tax. A substantial understatement of income tax is defined as an understatement for a year that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

With regard to the penalty, respondent has satisfied his burden of production by virtue of our ruling sustaining respondent's disallowance of the claimed $25,000 theft loss. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

In light of the substantial deficiency we sustain herein and petitioners' failure to establish reasonable cause with regard to the adjustments, petitioners are liable for the 20% accuracy-related penalty determined by respondent.

To reflect the foregoing,

Decision will be entered

under Rule 155.